"The jurors for the State upon their oaths present, that Daniel May, late of the county of Anson, on etc., with force and arms in said county, feloniously did steal, take and carry away a certain slave named Harry, of the value, etc., the said slave, Harry, then and there being the property of another, to wit: the property of Elizabeth Lynch, with an intention to sell said slave to another, contrary, etc.
"And the jurors aforesaid, upon their oaths, etc., do further present that Daniel May, afterwards, etc., with force and arms in the county aforesaid, feloniously by seduction, did take and carry away a certain slave named Harry, of the value, etc., the said slave, Harry, then and there being the property of another, to wit: of Elizabeth Lynch, with an intention, etc."
The evidence for the State was altogether circumstantial. It was proved, among other circumstances, that the prisoner was in possession of the slave in South Carolina, and there sold him — that the negro had left his owner against his will, on 19 or 20 March, and on the 30th of the same month, the prisoner under a feigned name, sold the negro, also under a fictitious name. Many circumstances were likewise introduced for the purpose of identifying the slave.
After the evidence for the State was closed, the prisoner offered to prove the issuing of a State warrant against one William May, Hardy May and the prisoner, for the same offense, for which he was now singly indicted — that William May had absconded from the State, in consequence thereof, having conveyed a negro woman and child to Mrs. Lynch (329) to compensate her for the loss of Harry. He also offered the confessions of William May, that he alone was guilty of stealing the slave. This evidence was objected to by Mr. Solicitor Troy. His Honor, Judge Martin, permitted the prisoner to introduce the State warrant, and to prove the flight of William May, but rejected the other part of the testimony. The prisoner then proved that William May resided about a fourth of a mile from Mrs. Lynch — that he fled immediately after the issuing of the warrant, and had not since returned — *Page 269 
that he himself resided twenty-two or twenty-three miles from Mrs. Lynch, near the South Carolina line and had not been seen in that neighborhood for five or six years.
The Judge, in charging the jury, commented at length on the testimony, and after he had completed his charge and the jury were about to retire, the counsel for the prisoner requested him to instruct them, that though they were satisfied of the identity of both the slave and the prisoner in the sale in South Carolina, yet if they believed that William May was the person who actually seduced and conveyed away the slave and the prisoner only received him knowing him to be stolen, he could not be convicted on that indictment. In reply to this, his Honor remarked in the hearing of the jury, that he did not like to distract the attention of the jury by abstract propositions, when there was no evidence to support them. He then summed up the evidence again, and stated to them that flight after a charge was a suspicious circumstance, and that they would decide whether they believed from these circumstances, that William May had stolen the slave and Daniel May had only received him knowing him to be stolen. His Honor then dwelt at length on the doctrine of presumptive proof, but it is unnecessary to state any other parts of the charge, as they were not excepted to.
The jury returned a verdict of guilty. A rule was obtained to show cause why a new trial should not be granted: first, because proper evidence had been rejected; and second, because the Judge had expressed his opinion to the jury on matter of fact. This rule being discharged, a motion was then submitted in arrest of judgment: first, because it did not appear on the (330) indictment that the theft was committed in the county of Anson; and second, because the name of the owner of the slave was set forth after a scilicet. This motion being overruled, and judgment of death pronounced, the prisoner appealed.
I should very reluctantly reverse the judgment upon the ground of the remark made by the Judge in the hearing of the jury, "that he disliked to distract their attention by abstract propositions, to which there was no evidence"; since he proceeded immediately to sum up the evidence offered by the prisoner touching the matter to which the instruction prayed for related, and gave the instruction, as prayed *Page 270 
for, that if the jury drew from it the conclusion of fact insisted on for the prisoner, he ought to be acquitted. Undoubtedly, it is error at common law to give such an instruction in a case where there is any evidence to the point, although that given may be manifestly insufficient to establish it. Still more it is erroneous, under our statute, as an expression of the opinion of the Judge upon the sufficiency of the proof. But I think it very clear, that if a Judge inadvertently commit an error in the course of a trial, he is bound to correct it, as soon as he is sensible of it; and that he is as much at liberty to correct one of this description as any other. If proper evidence, when offered, be rejected, it may afterwards be received. If improper evidence be received, it may afterwards be pronounced incompetent, and the jury instructed not to consider it. These are but examples; and the like holds in all other cases, unless the subject now under consideration furnishes an exception. I do not perceive a reason, why a Judge who conceives himself obliged to decide, and does decide a question, as being one of law, when it is rather one of fact to be left to the (331) jury, may not upon a change of opinion, retract his decision and submit the question to the jury. It cannot be imputed to the Judge, that he would criminally use the pretext of correcting himself, as the means of covertly conveying to the jury his opinion upon the facts. If he did, a reversal of his judgment would not be either an appropriate or adequate remedy, but public punishment. I am supposing an error committed honestly and inadvertently, and a sincere desire to correct it for the sake of duly administering the law between the parties. In such a case, I conceive it is not the object of the law, nor the province of an appellate tribunal, to watch for and catch at an inadvertence into which the Judge was betrayed for an instant; but to see that no error was finally committed, and that ultimately the law and justice of the country were truly administered. In the present case, I should have no doubt upon the point, if the Judge, besides submitting the case to the jury for their decision upon the evidence, had explicitly informed them, that he had improvidently expressed himself beyond his lawful authority, upon the evidence, and that it was their exclusive province to weigh it, and draw conclusions from it. Without such an explanation, probably the influence of the Judge's opinion, which the Legislature meant to prevent, might remain. With it, there could be no danger that a jury of ordinary intelligence, independence and integrity, could be misled; and to avoid that is the great purpose of the Legislative enactment. But I do not pursue this subject further, nor *Page 271 
express a conclusive opinion upon it; because I do not believe the case depends upon this point.
I conceive the remark of the Judge was strictly correct — that inlaw there was no evidence upon the point to which the instruction was prayed. The error of the Court was in submitting it to the jury at all.
The position taken for the prisoner was, that William May and not the prisoner, was the principal felon. As the guilt of the prisoner of the crime charged is presumptive, from his possession of the slave, and sale of him under the circumstances, it was doubtless material for him to establish (332) the fact asserted by him, as tending to rebut the presumption against himself. It is true that both might have been principal felons; but if William were proved to be clearly so, the prisoner's possession might be, and probably was derived from him. The question is not then, whether the fact contended for was relevant to the defense; for upon that there is no doubt. But the question is, by what evidence is it competent to the prisoner, upon this trial, to prove that fact. Direct evidence connecting William with the corpus delicti would certainly have been admissible. Testimony to the fact of seduction; to the possession by William anterior to that proved on the prisoner; or to any part of the res gestae constituting William's alleged guilt, would have been both relevant and competent. The prisoner offered nothing of that sort. Instead of it he offered evidence that William resided near Mrs. Lynch, while the prisoner lived twenty miles off, and had not been in her neighborhood for several years, and that a State's warrant had been gotten out against them both, as being equally concerned in the theft, and that William fled from the State; which was received. Besides this, he offered evidence, that William confessed that he alone had stolen the slave, and made compensation for him; which was rejected.
Except the facts of the respective residences of the parties, which of themselves, do not tend to establish guilt in either of the parties, it is obvious, that all the evidence, as well that received as that rejected, consists of the acts and declarations of other persons, to which neither the State nor the prisoner is privy. I think the whole of it was inadmissible. The confession is plainly so. It is mere hearsay. It may seem absurd to one not accustomed to compare proofs, and estimate the weight of testimony according to the tests of veracity within our power, that an unbiased confession of one man that he is guilty of an offense with which another is charged, should not establish the guilt of him who confesses it, and by consequence, *Page 272 
the innocence of the other, but the law must proceed on general principles; and it excludes such a confession upon the ground (333) that it is hearsay evidence — the words of a stranger to the parties, and not spoken on oath. Indeed, all hearsay might have more or less effect, and from some persons of good character, well known to the jury, it might avail much. Yet it is all rejected, with very few exceptions; which do not in terms or principle extend to this case. Even a judgment upon the plea of guilty could not be offered in evidence for or against another; much less a bare confession. As a declaration of another establishing his own guilt, the confession of a slave might be used upon the same principle. This, I recollect was attempted in Owen's case, and also in Kimbrough's; but in the Supreme Court it was abandoned, and the point is not reported.
If the confession and the act of paying for the slave were properly rejected, the other evidence ought also to have been rejected. I suppose the Court received it out of abundant caution and tenderness to the prisoner. But one principle extends to and excludes the whole. It is, that all was res inter alios acta; and could not be heard without some proof connecting William May with the fact, that is with the perpetration of some deed, entering into the crime itself. No part of it could be received to inculpate the prisoner, if it would have that effect, nor can it exculpate him. It is too uncertain, and too easily fabricated falsely for the purpose of deceiving, to be relied on or acted on in a Court. When received, if not followed by evidence of some fact tending directly to establish an overt act of William in the perpetration of the felony itself, it became altogether irrelevant and ceased to be evidence, for the purpose for which it was offered. For acts or declarations of William May, subsequent to the felony, indicative of a consciousness of guilt in him, when offered as evidence from which his guilt is to be inferred, cannot be stronger than his express admission of guilt.
In my opinion, therefore, there was no error in excluding the evidence; nor in the opinion pronounced by the Judge upon that received.
In speaking of the warrant, I must be understood to (334) refer to it as evidence for the purpose claimed in the instruction the Court was asked to give. It might be very sufficient for other purposes, as to contradict or discredit a witness or the like.
It is unnecessary for me to say anything on the motion in arrest of judgment, because I agree entirely with the opinion delivered by my brother Judge on that part of the case. *Page 273 
The judgment must be affirmed and a certificate sent to the Superior Court, to proceed to pass sentence of death.