STATE v. JOHN MORRIS.

*Homicide— Circumstantial Evidence— Tracks— Expert— Record Evidence— Trial.*

1. On a trial for murder, where the prosecution relies upon circumstantial evidence, it is competent to prove that certain tracks were measured and on comparison corresponded with the boot of the prisoner in size and shape; and this, where the measurement and comparison are made without the presence of the prisoner or previous notice to him. It is not necessary that a witness should be an expert to entitle him to testify as to the identification of tracks. *State* v. *Reitz,* 83 N. C., 634.

2. In such case, to show the motive of the prisoner, the state was allowed to introduce a record of an indictment pending against the prisoner and others charging them with larceny, and to prove that the deceased was implicated in the same, but having turned state's witness was omitted from the indictment; *Held* no error.

3. Discussion by RUFFIN, J., of the admissibility of records as evidence of their existence, and of parol testimony to show the applicability of

a particular part thereof to prove a particular fact; and of the principle governing the rule *res inter alios acta.*

4. The conduct of a trial is left to the discretion of the judge presiding; so, where on a trial for murder the prisoner objected to further examination of witnesses on account of a supposed informality in the oath taken by them, and the solicitor was permitted to recall and re-examine the state's witnesses after the administration of the oath prescribed by statute, and where the said witnesses were not separated when recalled for their second examination, the prisoner not renewing his request therefor; *Held,* that these and like exceptions are addressed to the discretion of the court, the exercise of which will not be reviewed.

5. On such trial, the prisoner alleged misconduct of the jury in allowing their officer to be present at their deliberations, and in respect to which the court found the facts to be: (1) The officer, mistaking his duty, communicated to counsel his belief as to how the jury were divided. (2) He slept in the room with the jury, but was not present at any time when they were discussing the case. (3) No improper communications were made to or by the jury; and the court refused a motion for a new trial; *Held* in such case that the circumstances being such as to put a suspicion on the verdict by showing, not that there was, but might have been undue influence on the jury, the granting of a new trial was matter of discretion; but if the fact had been that undue influence *was brought* to bear on them, this court would direct a new trial to be had.

(*State* v. *Shepherd,* 8 Ired., 195; *State* v. *Tilghman,* 11 Ired., 513, cited and approved.)

INDICTMENT for murder, tried at Fall Term, 1880, of CLEAVELAND Superior Court, before *Seymour, J.*

The opinion contains the facts. The jury rendered a verdict of guilty, judgment, appeal by prisoner.

*Attorney General,* for the State.
*Messrs. Bynum & Grier,* for the prisoner.

RUFFIN, J. The prisoner was indicted at fall term, 1880, of Lincoln superior court, for the murder of one Joe Roark, and having procured his cause to be removed, was tried at fall term of Cleaveland court.

The killing occurred on the 10th of August last, about 9 o'clock at night, in a street of the town of Lincolnton.

The state introduced the sister of the deceased, who testified that her brother was shot in front of her house ; that hearing him cry out she went to her door, and there saw some one over her brother beating him on the head ; whereupon she made an outcry and the person fled, going across the "church lot," and towards the railroad.

The deceased made a declaration before his death, to the effect that two men met and passed him on the street, when one turned and shot him, and then ran across the "church lot." The state then offered evidence to show that there were the tracks of some one leading from near the spot where the shooting occurred, and across the church lot, and thence down the railroad for some distance and up a street when the impressions ceased, but their direction was towards a quarter of the town where a number of colored people, including the prisoner, lived.

The state then offered to prove by a number of persons that they had measured these tracks and applied the measurement to the boots of the prisoner, to which the prisoner objected, on the ground that the measurement and comparison had been made in his absence, and that he was entitled to notice, and to have been present or represented at such comparison. The court overruled the objection, and the witness deposed to taking the measurement of the tracks, and to its correspondence with the prisoner's boot in size, shape and other particulars.

The theory of the state was that the prisoner had a motive to kill the deceased arising out of a desire to rid himself of the evidence he apprehended the deceased would give against him in a prosecution for larceny then pending against him ; and in support of this, the state offered in evidence the record of an indictment for larceny, found at spring term, 1880, of Lincoln superior court, against the

prisoner and five others, and upon which the deceased was the only witness endorsed as having been before the grand jury; and to show by the clerk of that court, who produced the record, and by the record itself, that the deceased had been originally implicated in the same charge of larceny, but having turned state's witness against the prisoner and others indicted with him, he was omitted from the indictment. To all of which evidence the prisoner objected upon the ground that it was irrelevant, but the court overruled the objection and admitted the evidence.

The trial lasted through two days, and some of the state's witnesses were examined the first day and some the second; after the state had rested its case on the second day, the prisoner called to the stand a witness that had been sworn but not examined by the state, and during his examination it was discovered that the oath which had been administered to him and all the witnesses that had been previously examined, differed from the oath prescribed by the statute, and thereupon the prisoner objected to his further examination and insisted that all the testimony previously taken was incompetent, because it had not been given under the sanction of the proper oath. The solicitor then asked and was allowed to recall all the witnesses and after having the prescribed oath administered to examine them anew, to which the prisoner excepted.

When the trial was about to begin on the first day, the judge, at the instance of the counsel for the accused, directed the state's witnesses to be separated, and the same was done during their first examination; but when they were recalled and examined the second time (after the discovery about the oath) the prisoner made no such request, and the court no such order, so that some of those witnesses were in the court room during the examination of the others; to which the prisoner excepted.

One of the state's witnesses, after his examination on the

first day, went to his home in the country, so that he was not present when the other witnesses were recalled and examined on the second day, but arrived while the prisoner was examining his witnesses, and after he closed his case the solicitor was allowed by the court to examine him, to which the prisoner excepted.

After the verdict the prisoner moved for a new trial upon the ground that the officer in whose charge the jury were placed was in the room with them during the whole of one night, when the jury were considering of their verdict; and that during the time he made frequent communications to the solicitor and others of the progress of their deliberations, and how, and upon what points they differed.

The court heard the affidavits of the prisoner and other persons, and from them, made the following findings :

1. That the officer, under a mistaken view of his duty, did communicate to the counsel for the state and one of the attorneys for the prisoner, his belief as to how the jury were divided.

2. That he slept in the room with the jury, but was not present with them, at any time, when they were deliberating upon, or discussing the case.

3. That no improper communications were made to or by the jury. And thereupon the court overruled the prisoner's motion to which he excepted.

We know of no principle of law, or rule of evidence, under which the testimony offered by the state in regard to the examination of the tracks and boots of the prisoner, should have been excluded, because made in the absence of the prisoner, or without notice to him, to be present. The counsel who argued the case here for the prisoner, cited us to no authority in support of the position, and it is difficult to conceive that any such could be found ; as to admit it, is to put an end to all inquiry into the commission of offences depending upon the introduction of circumstantial evidence.

In such cases, the very effort is to ascertain the offender, and until facts and circumstances are established, which seem to indicate with reasonable certainty, who he is, there can be no one to whom notice could be given at the different stages during the progress of the investigation. When the guilty one is thought to be discovered, and he is put upon his trial, then, the law and the constitution declare it to be his right to be informed of the accusation against him, and to confront with opposing witnesses, those that may be brought against him; but not until then; and every such right was conceded to the prisoner in this case. The prisoner's counsel did not strenuously urge this point upon the court, but laid the stress of his argument upon the incompetency of the evidence in relation to the tracks, and their correspondence with the prisoner's boots, because, it did not appear that the witnesses who testified to those matters, were experts, or were acquainted with the tracks of the prisoner. In regard to which, it might be sufficient to say, that no such point was taken in the court below, and therefore, could not be taken here for the first time; but being a case involving the life of the accused, we should hesitate to deny him the advantage of the point, upon any such technical ground, if we felt that there was any force in it. But it has been so frequently, and so recently decided by this court, and so clearly taught in all the elementary authors, that it is not necessary that a witness should be an expert to entitle him to testify as to the identification of tracks, and their correspondence with the shoes that may be worn by parties on trial, as to leave it no longer an open question.

As to the introduction of the record of the indictment for larceny, against the prisoner and others, which the state offered to fix the prisoner with a motive for the commission of the crime, it certainly was not subject to the objection of irrelevancy urged in the court below; for being a case, turning upon circumstantial evidence, and the state having, as

it alleged, made proof of the *corpus delicti,* and having shown, by the tracks, that the prisoner was in such a situation as gave him the opportunity to commit the act, it then became incumbent upon it, to fix him, if possible, with the motive, and surely nothing could have a stronger tendency, or be more relevant, than to prove just what the state proposed, to wit: that the prisoner was then under an indictment for so grave an offence, and that the deceased was mainly, if not entirely, relied upon for his conviction ; and to show that he was thus indicted, there could be no higher or better proof than the record of the indictment itself. The pris-. oner's counsel, seemingly yielded this point too, as he did not urge it before us, but assumed the position that the record came within the principle of *res inter alios acta,* and was therefore incompetent. We do not think it subject to this objection either, as we understand the rule of evidence to be that a record is evidence of its existence (and this was all that the state sought to establish by it) against all the world. When offered to conclude or estop as to their subject matter, records are admissible only as to parties and privies, but when offered merely to prove their existence, and that a certain thing was done by the court, they are admissible against strangers, in any matter of controversy, in which they may be material ; and not only are records competent in such cases, but particular parts of records, when offered to show a particular fact, and their applicability to the subject may be shown by parol testimony. "A judgment," says Greenleaf, in section 527 of his treatise on Evidence, "when used by way of inducement, or to establish a collateral fact, may be admitted, though the parties are not the same." And again in section 575 he says, "a verdict and judgment in any case, are always admissible to prove the fact that the judgment was rendered or the verdict given; for there is a material difference between proving the existence of the record, and its tenor, and using the record as the medium of proof of

matters of fact recited in it." In this particular, it stands upon the same footing with a deed, which is evidence of its own existence against all the world; but of the truth of the matters recited therein, it is evidence against parties and privies only. So in the case of *State* v. *Shepherd*, 8 Ired., 195, which, in many particulars, resembles the present case, the state, having shown that the deceased had bought the land of the prisoner at sheriff's sale, and that the prisoner had threatened to slay him whenever he took a deed for it, offered in evidence a deed which the sheriff had given him a short time previous to the killing, which was objected to, upon the ground taken here, of its being *res inter alios acta,* but the court, trying the prisoner, ruled it to be competent, and upon an appeal to this court, the ruling was approved. In the light of these authorities, this court feels constrained to overrule the exception of the prisoner in this particular, and to say that the record was competent evidence for the purpose for which it was offered by the state.

As to the alleged irregularity in the conduct of the case, consisting in the court's having allowed the solicitor after the discovery of the supposed error in the oath which was at first administered to the witnesses, to recall and re-examine all the state's witnesses, we cannot see that the judge below could have proceeded under the circumstances otherwise than he did. If he had made a mistrial, it would have raised a serious question as to whether the prisoner having once been in jeopardy could again be put upon his trial. It was upon an objection urged by the prisoner himself, that he determined to proceed no further in the trial until the witnesses were re-sworn, so that their testimony should go to the jury under the sanction of the proper oath. It is impossible for the law to foresee and provide for all the contingencies that may arise unexpectedly in the course of trials on the circuits, and something must be left to the discretion and sound judgment of the judge, and this court

will not undertake to review the exercise of that discretion. It is true that if it should appear that this discretion had been so exercised as that the prisoner had been deprived of a fair trial, this court, as said by the late Chief Justice in the case of *State* v. *Tilghman*, 11 Ired. 513, would assert the right to grant a new trial. But we cannot perceive that this prisoner's rights were in any way impaired by the action of His Honor in the premises.

All trials proceed upon the idea that some confidence is due to human testimony, and that this confidence grows and becomes more steadfast in proportion as the witness has been subjected to a close and searching cross-examination; and this, because it is supposed that such an examination will expose any fallacy that may exist in the statement of the witness, or any bias that might operate to make him conceal the truth, and trials are appreciated in proportion as they furnish the opportunities for such critical examinations. To those who are accustomed to participate in trials at the bar, it is well understood to be an inestimable advantage to be able to enter upon a cross-examination of an adversary's witnesses with a knowledge of what their answers would be to questions propounded, and of their bias and prejudices. So that, in the opinion of this court, the prisoner, so far from being prejudiced by the action of the court below, had afforded him in the fact that his counsel had two opportunities to cross-examine the witnesses of the state, an advantage that rarely falls to the lot of parties situated like himself.

In regard to the failure of the judge to direct a separation of the witnesses when recalled for their second examination, it is sufficient to say that no request for their separation was made by the prisoner. It was at his instance that the first order was made, and if repeated, it is impossible to suppose that his request would have been disregarded. Until

STATE *v.* MORRIS.

requested, the judge had no means of knowing that in the changed condition of the case it was still desired.

The counsel did not press the exception growing out of the fact that the court permitted the solicitor to call a witness after the prisoner's case had been concluded, conceding it to be a matter addressed to the discretion of the presiding judge, the exercise of which could not be reviewed here.

The last ground of exception taken for the prisoner was the alleged misconduct of the jury in allowing their officer to be present at their deliberations. After a careful consideration of the statements contained in the record and the affidavits which accompany it, we cannot say certainly that any undue influence was brought to bear on the jury. Indeed we concur with His Honor in thinking there was none, and that the most that can possibly be said, is, that there *might have been* as there was the opportunity for it. Such being the case, it was a matter wholly in the discretion of the presiding judge to determine what should be done in the premises. " If," says the late Chief Justice in *Tilghman's* case, "the circumstances are such as merely to put a suspicion on the verdict by showing, not that there was, but that there might have been undue influence brought to bear on the jury, it is a matter within the discretion of the judge presiding; but if the fact be that undue influence was brought to bear on them, this court as a matter of law will direct a trial to be had, for in contemplation of law there was no trial."

There is no error. Let this be certified that the court below may proceed to judgment.

PER CURIAM.                                    No error.