[No. 3506.]

THOMAS WATTS, *alias* L. R. JONES, *v.* THE STATE.

1. PRACTICE — EVIDENCE.— It is not only permissible, as a means of disclosing a witness's bias, and to establish a predicate for his impeachment, to ask, but the witness may be compelled to answer, questions concerning his motives and prejudices. And great latitude is allowable when the object of such examination is the impeachment of the credibility of the witness.

2. SAME.— In order to show the animus of the principal witness for the prosecution, and to break the force of his testimony, the defense proposed to read in evidence an indictment charging the witness with a fraudulent connection with the same property that was the foundation of this prosecution, and, in order to show that he was testifying under circumstances that amounted to duress or coercion, it was proposed to show that he must so testify as to convict the defendant or else establish his own guilt. *Held,* that the indictment and proof were admissible and legitimate, both to show the motive and impeach the credibility of the witness; and its exclusion was error.

3. SAME.— If, upon the trial of a cause, a question of admissibility of proposed evidence arises, and it becomes probable that the jury may be improperly influenced, *pro* or *con,* by the argument upon the question, the court should have the jury retired from the court, in charge of an officer, until the mooted point is decided.

APPEAL from the District Court of Limestone. Tried below before the Hon. L. D. Bradley.

The conviction in this case was for swindling one L. A. Hord, in Limestone county, Texas, on the 18th day of January, 1884, by selling him a mule which he claimed to own, but which belonged to another. The penalty imposed was a term of two years in the penitentiary.

L. A. Hord, the first witness for the State, testified that on or about January 18, 1884, the defendant came to witness in Mexia, Limestone county, Texas, and introduced himself as L. R. Jones. He told witness that the mule he had with him was his mule, and proposed to sell the witness the said mule. He said that he had an absolute right to sell the mule, and exhibited a bill of sale for the mule executed to L. R. Jones, which name he then claimed. Witness bought the mule, paying the defendant $75 in United States currency. This money, his own property, the witness parted with, confiding in the truth of the defendant's representation that he owned the mule and had the right to sell it. Five or six days after this purchase, the defendant's brother, A. P. Watts, came to the witness and claimed the mule, but witness refused to surrender it. He returned a few days later with another party, and again claimed the mule, when the witness gave it up. Defendant was not present on the occasion of either of these visits. Upon the ground that what A. P. Watts said to the witness Hord, and what he did in connection with the mule, in the absence of the defendant, was irrelevant and incompetent, the defendant objected to the evidence respecting the acts and statements of A. P. Watts; which objection was overruled.

In October, 1884, the witness attended a justice of the peace's court in Robertson county, and there met the defendant and his brother A. P. Watts, who were present as witnesses in some case pending in that court. Witness recognized the defendant as the man who sold him the mule, accosted him as Jones, and asked him about the mule. Defendant replied that the witness was mistaken; that he was not the party who sold him the mule. Witness, however, was certain of defendant's identity, and arrested him. Witness recovered the mule, and, on the order of the defendant and his brother on their mother, obtained a gray mare of little value, to reimburse him for his trouble, expense and deterioration in value of the mule, because of its then reduced condition.

A. P. Watts, the brother of the defendant, testified, for the State, that some time early in January, 1884, the defendant, Thomas Watts, left home to go to Hot Springs, Arkansas. A few nights afterwards the witness and his mother, who lived together, left

their home to spend the night, leaving the mule in controversy in the horse lot. The mule was missing next day, when they returned. At the request of his mother, who owned the mule, witness instituted search for the animal, and within a few days found it in the possession of Mr. L. A. Hord, in Limestone county, Texas. Witness claimed the mule for his mother, and demanded it in her name. Mr. Hord refused to surrender it. Witness went back home and soon returned with another party, demanded and received the mule, and took it home to his mother. Defendant was not present at either of these interviews with Mr. Hord.

Defendant returned home in July, 1884, and was at home in October, when Mr. Hord put in his appearance. Defendant had never said anything in the presence of the witness about his having taken the mule and sold it to Hord, and witness knew nothing of his having done so until Hord accused defendant in October. On his cross-examination, this witness stated that this mule was the property of his deceased father at the time of his death. His mother had agreed to sell the mule to the defendant, but he was not to acquire title or possession until he paid for it, which he never did. Witness had charge of and was attending to the mule, and it was taken without his consent. Both witness and his mother were ignorant of the defendant's connection with the taking of the animal, and attributed the theft to other parties. Had they been apprised of the truth, they would not have sought to recover it.

The defendant's mother was his only witness. She testified that the mule was taken from her lot, one night during the absence of herself and her son A. P. Watts. She did not know who took it. That mule belonged to the defendant, having been sold to him by his father prior to his death. Defendant was staying with witness, and witness, who had advanced him about $50, had told him that he could not have the mule until he paid her,— that upon payment she would execute him a bill of sale. Witness never executed that bill of sale, but the mule belonged to the defendant.

Cross-examined, the witness said that when she sent for the mule she did not know that it had been sold by the defendant. In answer to a question, she said that she never gave the defendant a bill of sale to the mule. In answer to another question, the witness admitted that she told Mr. Swann, attorney for the defense, that she did execute a bill of sale to the defendant, conveying the mule; which statement she declared, upon reflection, to be a fact, though that bill of sale was not given in the name of L. R. Jones. Witness could not say why defendant took the name of L. R. Jones.

Defendant came home July 8, 1884, and was at home when Mr. Hord came there. Defendant, previous to Hord's arrival, told witness that he had taken and sold the mule to Hord. He said, when he saw the mule on his return: "Why, that is Mr. Hord's mule." The reason why witness did not send the mule back to Hord immediately was that she wanted to punish the defendant. She told defendant afterwards, when he asked permission to take the mule back to Hord, that he could do so when he had worked for her two months. The time was near up, and witness was on the eve of sending the mule to Hord, when he came, claimed and got it.

The indictment against the witness A. P. Watts, which is the subject-matter of the second head-note of this report, charged him with fraudulently obtaining the said mule from L. A. Hord, by means of false representations, etc.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. In a criminal prosecution it is not only permissible to ask, but a witness may be compelled to answer, questions concerning his motives and his prejudices. He may thus be required to explain whatever would show bias on his part, or incapacity to testify accurately. (Whart. Crim. Evid., § 477.) A defendant has the right to show bias on the part of the witness, if he can. In such examinations great latitude is allowed where the object is to impeach the credit of the witness. (*Blunt* v. *The State*, 9 Texas Ct. App., 234; *Daffin* v. *The State*, 11 Texas Ct. App., 76.)

The principal witness against appellant on the trial was his brother. To break the force of his testimony and show the animus or motive of this witness, defendant proposed to read in evidence an indictment against the witness for fraudulently obtaining the identical mule appellant was charged with stealing, from the party to whom defendant was alleged to have sold it; and it was further proposed to be proven by this witness that he, the witness, was testifying under circumstances which amounted to duress or coercion. To establish this, the defendant proposed to prove by the witness the existence of a state of facts showing witness's connection with the mule and his prosecution with regard to it, which facts, it was claimed, would show that it was impossible, from the peculiar surroundings and connection of witness and defendant with them, that

witness could testify otherwise than so as to convict defendant or establish his own guilt.

We are of opinion that the proposed evidence was admissible and legitimate, both to show motive on the part of and to impeach the credibility of the witness. (*State* v. *Morris*, 84 N. C., 756.)

It appears from one or more of the bills of exception that, when the proposed evidence was objected to by the prosecution upon the ground that it was irrelevant and incompetent, defendant's counsel proposed to state and show its relevancy, but was not permitted to do so by the court, for the reason, we are led to infer, that the court feared that, in giving his reasons and in making his statement, facts and circumstances not in evidence would be put improperly before the jury. In all such cases, in order to avoid improper influences and results from the argument as to the admission of doubtful testimony, and where the court consents to hear the reasons of the counsel proposing it, in support of its relevancy and admissibility, the court should have the jury retired from the court room to their own room, in charge of an officer, until the discussion is over and the question of the admissibility is passed upon and decided by the court.

Because the court erred in excluding the evidence above discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered June 6, 1885.]