### THE STATE v. F. S. CRANE.

*Fornication and Adultery—Evidence—Trial—Juror—Verdict—Judge's Charge.*

1. A new trial will not be awarded for the admission of incompetent evidence, where it appears that the evidence was subsequently withdrawn and the jury instructed not to consider it, or to consider it only as bearing upon a particular aspect of the case to which it was relevant.

2. Upon the trial of an indictment for fornication and adultery, the defendant, being examined as a witness, denied his guilt, and swore that he was surprised at the charge when he first heard of it, and that his wife had never made such a charge, or referred to it: *Held*, that his admission that he did know of the charge prior to the time to which he had sworn, and that he had been charged by his wife with the offence, was competent in contradiction.

3. Where the State relies upon circumstantial evidence of such kind that each circumstance is a necessary link, an instruction to the jury that it is incumbent on the State to establish each circumstance beyond a reasonable doubt would be proper ; but where various independent circumstances are relied upon to establish a fact, an instruction that the jury must be satisfied, upon the whole evidence, of the guilt of the defendant is sufficient.

4. Upon a motion to set aside a verdict on the ground that a juror had been tampered with, the finding by the trial Judge of the fact that the juror had not been influenced by the effort to tamper with him is conclusive.

AVERY, J., dissented.

This was an INDICTMENT for fornication and adultery, tried at Fall Term, 1891, of the Superior Court of UNION County, before *Hoke, J.*

The State offered one T. J. Ezzell as a witness, who testified that he and Dr. Rone were appointed to go and see defendant and ask him about the charges preferred against him, and that they went to him and had a conversation with

him on the 29th of May, 1890; that Dr. Rone read to the defendant, at the request of the witness, the following paper:

" We, the undersigned citizens of Marion and vicinity, do hereby this day, this the 28th day of May, 1890, have decided that you, F. S. Crane, by your conduct, have brought shame and reproach upon your family, and we have decided that we will tolerate it no longer, unless you change your manner of living and treatment to your wife and children, if we have to appeal to the laws of our land to do so.

We understand that you have proposed to your wife that you will return home if she will bring her two oldest daughters home and let you satisfy your carnal appetite upon them."

(Signed by witnesses Ezzell, Rone and others.)

That defendant said, in answer to an inquiry as to his guilt or innocence after this paper was read to him, that he had been guilty of keeping the oldest girl (his step-daughter and co-defendant in this bill) for some three or four years, but that the other girl was innocent.

Defendant objected to the introduction of the paper above recited, for the reason that it purported to be the resolutions of an indignation meeting based entirely upon hearsay, and wholly *ex parte* as to him, and was calculated to mislead the jury and prejudice his cause. The Court stated to the jury that the paper was not itself evidence of defendant's guilt, nor of the facts therein stated, nor as purporting to give the proceedings of any meeting, nor that any meeting had been held, but was admitted simply as a part of the conversation between the witness and the defendant, and in order to make defendant's answer to witness' question intelligible, and permitted the paper to be read for this purpose.

Defendant excepted.

In the charge the Court cautioned the jury as to the restricted purpose for which the paper was permitted to be read.

The witness Ezzell further testified that he said to defendand that he was sixty-five years old, and this was the meanest thing he ever knew a man to be guilty of, black or white. That defendant replied, " Well, it's the only mean thing you can bring against me." Defendant excepted to the language of the witness Ezzell, which was overruled, and the defendant excepted.

The defendant Crane was examined as a witness in his own behalf. He denied his guilt, and denied the admission testified to by witness Ezzell. Among other things, he stated he was much surprised at hearing the charge made by Ezzell and Rone; that he had never had any information before that time that he was suspected of being too intimate with his stepdaughter; that his wife had never made any charge against him, nor referred to it. He further denied that he had ever stated to one J. T. Rogers, sometime in June or July, 1890, shortly after the conversation with Ezzell, that his wife had left him at Greenwood, S. C., sometime in February or March, 1890, because she said he wished to sleep with her two oldest daughters, etc.

The witness Rodgers was examined by the State, and testified, that in June or July, 1890, in South Carolina, the defendant approached witness, and they had a conversation. Witness asked defendant why his wife had left him at Greenwood. Defendant replied, that his wife told him when she went back to Marion (defendant being absent) that she left him because he wished to sleep with her girls. Witness asked, which girls? Defendant said her oldest girls. Witness asked if her complaint was that he wished to sleep with them to take care of them, or gratify his evil nature; to which defendant replied, for the reason that he wished to gratify his evil nature.

Defendant objected to this evidence for the reason that the sole effect was to mislead the jury, and lay before them declarations of his wife in defendant's absence; that there was nothing therein in the shape of a confession, and the evidence could only mislead. The evidence was admitted, and the defendant excepted.

The Court told the jury, in reference to this evidence, that the declarations of the wife, made in the defendant's absence, was not evidence of his guilt, and not substantive evidence on that question; that the conversations were admitted as statements of the defendant, tending to contradict or impeach his evidence, and should only be considered for such purpose.

There was a large amount of evidence both for the State and the defendant. That for the State included quite a number of witnesses who testified to facts and circumstances tending to fix guilt on the defendant, occurring at different times and independent of each other. There were also two confessions of defendant to having had adulterous intercourse with his step-daughter continuously for two or three years prior to the bill of indictment. The one to the witness Ezzell above referred to, and another to one J. B. Sullivan. The defendant asked the Court to instruct the jury as follows:

"In this case the State relies in a large measure upon evidence of circumstances, and it is incumbent on the State, therefore, to prove all the circumstances on which it relies, beyond a reasonable doubt, and it is the duty of the jury in passing upon the guilt or innocence of the defendant to discard any and all circumstances that are not so proven." The Court declined to give this instruction, and the defendant excepted.

The Court charged the jury, explaining the nature of the charge and the evidence as it bore upon it, and pointed out to the jury what evidence was to be considered as substantive evidence, and what was only corroborative and impeaching and told the jury that, before they could convict the defend-

ant, they must be satisfied upon the whole evidence, as so classified and applied; that the defendant was in the habit of having sexual intercourse with his step-daughter, Jennie Helms, and within two years prior to the finding of the bill of indictment; that one act of adulterous intercourse was not sufficient to make out the charge, nor two, nor three, but the jury must be satisfied that such intercourse was habitual between the parties within the prescribed period; they must be so satisfied beyond a reasonable doubt; they must be so convinced of defendant's guilt as to exclude every other reasonable hypothesis, and if, on the whole evidence, they were so convinced, they should return a verdict of guilty, and if otherwise, they should return a verdict of not guilty.

There was a verdict of guilty.

After the verdict was rendered, the defendant offered the affidavit of D. F. Sapp, one of the jurors who tried the cause, tending to show that he had been tampered with; but the Court found, as a fact, that the juror had not been influenced by the effort of the witness' Watson to tamper with him, and declined to disturb the verdict.

From judgment rendered by the Court, the defendant appealed.

*The Attorney General*, for the State.
*Messrs. D. A. Covington, J. B. Batchelor* and *John Devereux, Jr.*, for defendant.

CLARK, J.: As to the first exception, it is unnecessary to discuss whether the question was incompetent, for, if that be conceded, the error, if any, was cured by the explicit instruction to the jury at the time, and again in the charge, that the recital of facts in the question was not admitted as evidence, and was not to be considered as such by the jury. *State* v. *Collins*, 93 N. C., 564; *Bridgers* v. *Dill*, 97 N. C., 222; *State* v. *Eller*, 104 N. C., 853; *Blake* v. *Broughton*, 107 N. C.,

220. In *State* v. *Collins, supra*, the defendants were indicted for the larceny of some hams. The confessions of one of the defendants was erroneously received in evidence against the other. After one of defendants' counsel had spoken, and when the Solicitor was addressing the jury, the Judge withdrew from the jury the confessions, and it was held that this cured the error. The point is well considered by ASHE, J., who cites with approval the older cases, *State* v. *May*, 15 N. C., 328; *State* v. *Davis*, Id., 612; and *McAllister* v. *McAllister*, 34 N. C., 184 Indeed, our authorities are uniform on this subject. If juries should be deemed incompetent to comprehend, or unable to obey, so plain a direction as that a paper read in their hearing is "not to be considered as evidence, and that it had only been admitted to make the defendant's reply to it (when read to him) intelligible"—if so low an estimate should be placed upon juries, then the jury system is a failure, and should have no place in our jurisprudence. If unable to comprehend this, why so often contention whether instructions, frequently far more abstruse, should be given to the jury. But such a view is an unjust one; the jury is an essential part of the judicial system among every English-speaking people, and while not perfect, the experience of ages and the observation of the present are that it performs fairly well its part. Certainly no better substitute has ever been found. To underrate the intelligence of twelve honest impartial men who try the questions of fact submitted to them is a mistake. When aided by a just and intelligent Judge, their verdicts are generally correct. Jurors are not expected to possess legal training. Their province is not to pass on questions of law. But their grasp of the facts is usually just and accurate, and probably not a Court passes that upon the jury there are not men of equal mental capacity with the Judge who presides, or the counsel who addresses them. Jurors are not in their nonage, and it is not just to underrate their intelligence.

This Court has heretofore said as much in *State* v. *Jacobs,* 106 N. C., 695.

The second exception is without merit. The jury were entitled to the benefit of the *quasi* admission, and the language of the witness was necessarily given as a part of the conversation.

The third exception is equally without merit. The defendant, who was a witness in his own behalf, denied, on his examination, that he had stated to one Rodgers that his wife had left him in February or March, 1890, because she said he wished to sleep with her daughters, and said his wife had never charged him with it, nor referred to it. He had also testified that he had never been charged by his wife, or by anyone else, with such offence till the witness Ezzell and one Rone charged him with it on the 29th of May, 1890, and that he had, therefore, been much surprised when it was made by them; never having had so much as an intimation before that time that he was suspected of being too intimate with his step-daughters. It was, therefore, competent to prove by Rodgers that the defendant did make such statement to him in June or July, 1890, of what his wife had alleged when she left him in February, 1890. The Court instructed the jury that it was not substantive evidence, but was admitted only to contradict or impeach defendant's testimony. That his wife had left him, and that defendant admitted she had given such conduct on his part as the reason for doing so, was competent in view of his denial of any intimation of such charge having been made, and somewhat corroborative of the evidence of his two admissions of being guilty of the crime charged.

The prayer for instruction was properly refused. When the State relies upon a chain of circumstances, such that each circumstance is a necessary link in the chain, it would then be proper to charge that "a chain is no stronger than its weakest link," but when various facts and circumstances are relied

on, as in this case, to prove a fact, it would not be correct to charge, as asked, that " it was incumbent upon the State to prove all the circumstances on which it relies beyond a reasonable doubt." If, however, the prayer did not mean this, then upon the only other construction which can be placed on it, it was substantially given in the charge of the Court that, " upon the whole evidence," the jury must be satisfied beyond a reasonable doubt of defendant's guilt, and if not they must acquit him.

As to the fifth and last exception, the Court found as a fact that " the juror had not been influenced by the effort of the witness Watson." The finding of such fact by the presiding Judge, who is far better acquainted with the surroundings than we can possibly be, is conclusive, and we cannot look into the affidavits, whether one or more, to reverse such finding. We need not, therefore, consider whether the verdict of the jury could be impeached by one of its members. Certainly, it cannot be maintained that, as a matter of law, the verdict must be set aside because a juror is spoken to, when it is found as a fact that the verdict was not affected thereby. *State* v. *Morris*, 84 N. C., 756; *State* v. *Brittain*, 89 N. C., 481. Such a principle would place every verdict at sea whenever the losing party might be anticipatory and adroit enough to procure a witness of the winning side to address an improper remark to one of the jurors. When it appears only that there was opportunity whereby to influence the jury, but not that the jury was influenced, merely " opportunity and chance for it, a new trial is in the discretion of the presiding Judge." *State* v. *Brittain, supra; State* v. *Gould*, 90 N. C., 658; *State* v. *Miller*, 18 N. C., 500, and especially *State* v. *Tilghman*, 33 N. C., 513, where this point is elaborately discussed by PEARSON, J.