## STATE v. ROY E. SHOOK.

(Filed 13 December, 1944.)

**1. Criminal Law § 32a: Assault and Battery § 10: Homicide § 18b—**

Ordinarily, remoteness in time in the making of a threat otherwise admissible does not render it incompetent as evidence, but only goes to its weight and effect.

**2. Same—**

In a criminal prosecution for felonious assault upon an officer of the law, evidence of threats by the defendant against the officers of the law, as a class, is competent.

**3. Criminal Law § 32a—**

Instructions, regarding circumstantial evidence in a criminal prosecution, which adopt the formula that the jury must be satisfied beyond a reasonable doubt, do not disclose prejudicial error, even though the court failed to add that such evidence must "exclude every reasonable hypothesis of innocence," there being no special request for the judge to so instruct.

STATE *v.* SHOOK.

**4. Assault and Battery §§ 7c, 13—**

    An objection to the charge for failing to point out, in a prosecution for secret assault with intent to kill, that if the jury found no intent to kill, defendant might be convicted of a less offense, is untenable, where the judge had already instructed the jury on the crime charged, and the lesser offenses, or degrees of guilt, of which he might be found guilty.

**5. Arrest and Bail § 1c: Homicide § 13: Assault and Battery § 7a—**

    The doctrine that a man's house is his castle has no application to an officer seeking to make an arrest under a warrant charging a criminal offense. Such officer has authority to break open the doors of the dwelling occupied by the person whose arrest is directed, even during the nighttime.

APPEAL by defendant from *Dixon, Special Judge,* at August Term, 1944, of CUMBERLAND.

The defendant was indicted under a bill charging him with a felonious secret assault on one Jasper Holland, with a deadly weapon, with intent to kill, inflicting serious injury. He was found guilty of assault with a deadly weapon with intent to kill, inflicting serious injury not resulting in death, and sentenced to State Prison for the term of three years.

The evidence upon the trial may be summarized as follows:

Holland, with other officers, went to the home of the defendant, late in the night, to arrest him on a criminal charge under authority of a warrant then in their possession. The warrant was not in evidence, and it does not appear what crime was charged against the defendant. They searched the dwelling for him, and not finding him there, repaired to a garage, which was dug out in the hillside under the dwelling, with the front, or entrance, curtained, the curtain so divided that upon entrance of the car it would open and drop back together behind the car. Holland entered, began flashing his light around the garage, and while he was turned back toward the entrance, a gun was fired from within the garage, resulting in eleven shot wounds in Holland's hip, from which he bled freely. Holland was taken to the hospital and treated. The remaining officers returned to defendant's place, and failing to find him, "fired" tear gas into the garage.

Later, the defendant, when asked why he shot Holland, replied that he did not know "who he had shot." When arrested later and asked to go along with the officer, Shook said, "No," that he thought he would skip the country for awhile, but did not resist arrest. The defendant stated that the tear gas had made him sick and that he vomited blood all next day, but that he would have died before he would have come out. He asked the officer how the man he had shot was getting along.

There was evidence, to which defendant objected, that some nine or ten months before the shooting, defendant had said, "they would send

the God damned law up there if they wanted to, but he would kill them if they would come." That was in September, 1943. To admission of this evidence defendant excepted.

The defendant lodged an exception to the charge for that the jury was not instructed that if they found the defendant had no intent to kill, they might find him guilty of a less offense—or, as the assignment of error puts it, "of assault with a deadly weapon."

With respect to circumstantial evidence involved in the case, the following instruction was given to the jury:

"The State relies in this case upon what is known as circumstantial evidence, which is the proof of various facts or circumstances which usually attend the main fact in dispute, and therefore, tends to prove its existence or to sustain by their consistencies the hypothesis of claim. Circumstantial evidence consists in reasoning from facts, which are known or proved, to establish such facts which are conjectured to exist. This must be proven to you, and beyond a reasonable doubt by the State, before this man can be found guilty." To this defendant excepted.

The defendant further excepted to the charge as a whole because, since it did not appear affirmatively that the officers had a warrant charging a breach of the peace or graver crime, the court should have instructed the jury that the officers were trespassers and were not justified in breaking into defendant's home to arrest him.

Upon this conviction and sentence as above stated, defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes and Moody for the State.*

*Robert H. Dye for defendant, appellant.*

SEAWELL, J. 1. The first challenge which the appeal makes to the validity of the trial is the admission, over objection, to threats made by defendant against officers of the law, as a class, in September preceding the trial in the following August. This threat is, in a peculiar way, anticipatory of what happened the following June: ". . . they would send the G—— d—— law up there if they wanted to, but he would kill them if they did come."

Ordinarily, remoteness in time in the making of a threat otherwise admissible does not render it incompetent as evidence, but only goes to its weight and effect. *S. v. Payne,* 213 N. C., 719, 725, 197 S. E., 573. This Court has not, in any case, fixed a limit on the time within which such threat would become inadmissible. Under varying conditions it has found threats six months, nine months, one year, two years old, and more, admissible, especially when those more remote are repeated within a more recent period. *S. v. Payne, supra,* and cases cited; ·*S. v. Howard,*

82 N. C., 624; *S. v. Exum*, 138 N. C., 599, 50 S. E., 283; *S. v. Wishon*, 198 N. C., 762, 153 S. E., 395. Nine months, as in the present case, have not been regarded as rendering the evidence incompetent; *S. v. Exum, supra;* and as pointed out in *S. v. Johnson*, 176 N. C., 722, 97 S. E., 14, in *S. v. Howard, supra,* threats made twelve months prior to the homicide were admitted without evidence of continuing threats. While the objection to the evidence was not on the ground that it was not directed against Holland personally, it is well to note that it was directed toward a class to which he belonged—that is, officers of the law. *S. v. Payne, supra.* The evidence was competent. In this connection we think it immaterial that the judge referred to the officers as police officers.

2. The instruction regarding circumstantial evidence, quoted in full in the statement, while not sufficiently clear and exact to be approved as a model, does not disclose prejudicial error—at least the assignment of error made by the appellant is untenable. The objection is that the judge did not add to the instruction given that, in order to justify a verdict of guilty, the circumstantial evidence must "exclude every reasonable hypothesis of innocence." That, indeed, it must do; but after all, the convincing effect of circumstantial evidence on the mind of the jury is measured by the same standard of intensity required of any other evidence—the jury must be convinced beyond a reasonable doubt as to every element of the crime before they find the defendant guilty of it, whether the evidence is wholly circumstantial, only partly so, or entirely what we sometimes refer to as direct. No set formula is required to convey to the jury this fixed principle relating to the degree of proof required for conviction.

The instruction adopts the formula most often used and to which we sooner or later all refer—proof beyond a reasonable doubt. *S. v. Crane,* 110 N. C., 530, 15 S. E., 231; *S. v. Flemming,* 130 N. C., 688, 41 S. E., 549; *S. v. Wilcox,* 132 N. C., 1120, 44 S. E., 625; *S. v. Adams,* 138 N. C., 688, 50 S. E., 765; *S. v. Neville,* 157 N. C., 591, 72 S. E., 798; *S. v. Willoughby,* 180 N. C., 676, 103 S. E., 903.

In *S. v. Adams, supra,* discussing proof by circumstantial evidence, it is said:

"Nor did the court err in refusing to give the first prayer for instruction. There is no particular formula by which the court must charge the jury upon the intensity of proof. 'No set of words is required by the law in regard to the force of circumstantial evidence. All that the law requires is that the jury shall be clearly instructed, that unless after due consideration of the evidence they are "fully satisfied" or "entirely convinced" or "satisfied beyond a reasonable doubt" of the guilt of the defendant, it is their duty to acquit, and every attempt on the part of the courts to lay down a "formula" for the instruction of the jury, by

which to "gauge" the degrees of conviction, has resulted in no good.' We reproduce these words from the opinion delivered by *Pearson, C. J.,* in *S. v. Parker,* 61 N. C., 473, as they present in a clear and forcible manner the true principle of law upon the subject. The expressions we sometimes find in the books as to the degree of proof required for a conviction are not formulas prescribed by the law, but mere illustrations. *S. v. Sears,* 61 N. C., 146; *S. v. Knox, ibid.,* 312; *S. v. Norwood,* 74 N. C., 247. The law requires only that the jury shall be fully satisfied of the truth of the charge, due regard being had to the presumption of innocence and to the consequent rule as to the burden of proof. *S. v. Knox, supra.* The presiding judge may select, from the various phrases which have been used, any one that he may think will correctly inform the jury of the doctrine of reasonable doubt, or he may use his own form of expression for that purpose—provided, always, the jury are made to understand that they must be fully satisfied of the guilt of the defendant before they can convict him. In *S. v. Gee,* 92 N. C., 761, where the court below had refused to charge according to one of these supposed formulas, and told the jury that it was not a rule of law, but only an illustration, and intended to impress upon the jury the idea that they should be convinced beyond a reasonable doubt of the defendant's guilt, the Court, by *Smith, J.,* said: 'We do not see in the charge, or in the manner of submitting the case to the jury, any error of which the defendant has a right to complain.' "

In the *Flemming case, supra,* the Court approved of the following instruction:

"In this case the State relies upon both direct and circumstantial evidence, and before the State can rely upon circumstantial evidence it is necessary for the State to establish every circumstantial fact upon which it relies, beyond a reasonable doubt," and added: "In this the court followed exactly the rule laid down in *S. v. Crane,* 110 N. C., 536, which has since been more fully stated in *S. v. Shines,* 125 N. C., 730."

In *S. v. Willoughby, supra,* with respect to the addendum, the admission of which appellant points out as fatal error here, the Court said:

"It may have been well to add that the circumstances found by the jury to exist must exclude every other reasonable conclusion except the guilt of the defendant, but the failure to do so is not reversible error in the absence of a special request to so instruct the jury." There was .no such request made.

Obviously, however apt the expression may be as applied to circumstantial evidence, the exclusion of every reasonable hypothesis of innocence is the equivalent of conviction beyond a reasonable doubt, involves the same mental processes, and results in the same psychological state to which we sometimes refer as satisfaction to a moral certainty.

3. The objection that the instructions were erroneous in failing to point out that if the jury found that Shook had no intention to kill Holland, they might find the defendant guilty of a less offense, is not tenable, upon reading the charge contextually, as we are required to do. *S. v. Elmore,* 212 N. C., 531, 193 S. E., 713; *S. v. Hunt,* 223 N. C., 173; *S. v. Wagstaff,* 219 N. C., 15, 12 S. E. (2d), 657. In the beginning of his charge, the judge instructed the jury as to the crime charged, and the lesser offenses, or degrees of guilt, of which he might be found guilty. There might have been more elaboration; but we think it must have been reasonably clear to the jury that, in the absence of an intent to kill, it would be their duty to find only an assault with a deadly weapon, or such less offense as the court distinguished in its orderly presentation, in descending scale, of the offenses and degrees of offenses of which defendant might be convicted.

4. It appears from the evidence that Holland was an officer, acting under authority of a warrant commanding him to arrest the defendant for a criminal offense. He was therefore not a trespasser in entering upon the premises of defendant in the attempt to apprehend him. In *S. v. Mooring,* 115 N. C., 709, cited by defendant, where the defendant was charged with an assault on an officer who entered the premises in an attempt to make an arrest, *Justice Avery,* writing the opinion of the Court, said:

" 'The doctrine that a man's house is his castle, which cannot be invaded in the service of process, was always subject to the exception that the liberty or privilege of the house did not exist against the King.' *Commissioners v. Reynolds,* 21 Am. Rep., 510. Hence, the rules applicable where a forcible entry is effected in order to execute a *capias* issued in a civil action, do not apply in the case at bar. 1 A. & E., 722. The officer did not justify the breaking on the ground that he had a search warrant, but a warrant for the arrest of a particular prisoner, and we are not called upon, therefore, to enter into a discussion of the constitutional safeguards that protect dwelling-houses against undue search. If the officer have valid process in his hands, he does not become trespasser *ab initio* if he fail to find the accused in the house after breaking the door."

The distinction made in the cited case as to authority of the officer to enter the premises forcibly is between an officer serving civil process and one executing a criminal warrant, and does not refer to differences in the grades of offenses charged in the warrants as affecting such right. An officer in making an arrest under a warrant charging a criminal offense has the authority to break open the doors of the dwelling occupied by the person whose arrest is directed, even during the nighttime. 4 Am. Jur., Arrest, sections 83 and 84; 6 C. J. S., p. 615. Defendant's objection in this regard is not tenable.

At the conclusion of the State's evidence, the defendant demurred to the evidence and moved for judgment of nonsuit. The motion was properly overruled.

We find

No error. ·