THE STATE v. ALEX. OXENDINE.

*Homicide—Trial—Severance—Evidence—Judge's Charge.*

1. It is well settled that the question of severance is submitted to the discretion of the trial Judge, and the exercise of that discretion, except in case of gross abuse, is not reviewable by the appellate Courts.

2. Upon a joint trial of three persons for murder, the State offered evidence of the declarations of one of the prisoners to show his guilt, but they were not made in the presence or knowledge of the others: *Held*, that it was the duty of the Judge, in his charge to the jury, especially when he had been so requested, to particularly direct the attention of the jury to this aspect of the evidence, and to instruct them specifically as to its nature and the extent of its competency, and to caution them against giving it any weight when determining the guilt or innocence of the prisoners who were not bound by it, and that a general charge that the jury should not consider any admission or declaration of one prisoner against the others, unless they were present when made, was not a sufficient compliance with the law.

This was an Indictment for Murder, tried at May Term, 1889, of ROBESON Superior Court, *Gilmer, J.*, presiding.

Only Stephen Jacobs and appellant were on trial.

There was a verdict of "guilty," and from the judgment pronounced thereon the prisoners appealed. Jacobs' appeal was disposed of at last term (*State* v. *Jacobs*, 106 N. C., 695).

*The Attorney General*, for the State.
*Mr. W. F. French*, for the defendant.

SHEPHERD, J.: The prisoner was jointly indicted with Stephen Jacobs, Purdie Jacobs and Make Mitchell for the murder of one Mrs. Apps, and, upon the arraignment, he and the said Mitchell moved for a severance. The motion was granted as to Mitchell but refused as to the prisoner, who, after requesting that he might be tried with Mitchell, was put upon his trial with Jacobs.

It is well settled that the question of severance is addressed to the wise discretion of the trial Judge (*State* v. *Gooch*, 94 N. C., 1006; *State* v. *Smith*, 2 Ired., 402; 1 Whart. Cr. Law, 433), and that the exercise of this discretion, except in cases of gross abuse, cannot be reviewed by the appellate Court. The duty of passing upon such motions is one of very grave responsibility and its discharge is often very perplexing to the Judge, the difficulty in many instances being enhanced because it cannot, before trial is entered upon, be satisfactorily ascertained whether the defences are so antagonistic that the parties cannot be fairly tried together. When, however, a severance is declined and the trial develops conflicting defences, involving the admission of testimony against one party which is inadmissable against the other, it becomes the duty of the Judge by clear and distinct instructions in his charge to guard against the prejudicial effect of such testimony by stating it carefully and specifically to the jury, explaining to them the peculiar and exclu-

sive applicability to the party against whom it is competent and earnestly admonishing them against its influence in determining the guilt of the other. *State* v. *Powell*, 106 N. C., 635.

It is believed by some that even the most painstaking efforts of the Judge will often fail to efface from the minds of the jury the influences made by hearsay or other incompetent testimony, and the task is rendered all the more discouraging by the repetition of such testimony in the arguments of counsel, directed, as they are, in the interest of their respective clients  It is said that it requires the highest exercise of the intellectual faculties to free the mind from erroneous opinions founded upon improper testimony, and that so great is the infirmity of man that often the most severely trained intellects are incapable of accomplishing so gratifying a result.

It is but natural, therefore, that the same law which, for purposes of convenience or other policy, makes it possible, in some cases, that such exceptional testimony may be heard, should also devolve upon its Judges the imperative duty of exerting themselves to remove its prejudicial effects. This is demanded by every principle of humanity as well as of justice.

Was this duty performed in the present case? There was testimony tending to show that the deceased was killed while in her house by shots fired by some person or persons from the outside, and that Jacobs, Mitchell, and the prisoner were the guilty parties.

In the course of the trial the State introduced one Hinson, who was permitted, over the objection of the prisoner, to testify to certain incriminating "admissions or declarations" made by Jacobs, "in the absence and out of the hearing" of the prisoner. The said witness testified that Jacobs told him (we give the substance of the testimony only) that it was not he (Jacobs) who killed Mrs. Arps, but that it was the pris-

107—50

oner, and that he (Jacobs) "shot with small shot" only. The Court stated that, when it charged the jury, it would instruct them that the testimony was "no evidence" as against the prisoner, and in the notes of the testimony it is stated that the Court "did so charge."

Another witness for the State (whose name is not given) testified, over the objection of the prisoner, that Mitchell told him that the prisoner had a gun and fired into the house of Mrs. Arps, the prisoner not being present at such conversation. Mitchell had been introduced and examined by the prisoner, and testified that he and the prisoner had been forced to go with Jacobs, and that they took no part in the shooting, and did not aid or abet the same. The prisoner contended that the testimony of said witness for the State could only be "used to attack the character of Mitchell," and his Honor said that such was the law, and that he would so instruct the jury. In the notes of the testimony it is stated that "the Judge did so charge" as to the alleged "admissions or confessions, * * * telling the jury that, if made out of the presence of either of the defendants, there was no evidence against the absent defendant, and would be only considered as against the person making them." While this, it seems, would not have been a sufficient explanation of the purpose and effect of the testimony as to Mitchell's declaration (Mitchell not being upon trial), yet, conceding this to be so, and assuming, as we would have been warranted in doing in the absence of anything to the contrary, that the explanatory instructions as to the testimony of Hinson were also sufficient, still, when we come to the charge itself, we find a seeming conflict between what is there set forth and the statements made in the notes of the testimony as above recited.

As the instructions referred to in these statements embody only general legal principles, and as the statements do not expressly show that these important principles were applied

to the specific testimony of each of the said witnesses, the apparent conflict may be reconciled by construing the language of the statements to mean that the Court did no more than state the general propositions of law in the manner as set forth in the charge. This view is not unreasonable, because it is a mere matter of inference from the statements that the instructions were specifically applied to the testimony, whereas the charge *expressly* shows that this very important duty was not performed as required by the law.

This is manifest from a perusal of the charge, in which it is said that " his Honor did not read *any* of the evidence, or state *any* of the evidence to the jury." How could the Judge have pointed out the testimony mentioned, and instructed the jury in reference to it, unless he had read or stated such testimony. We are not required, however, to resort to such an inference, because it will be seen by reference to the charge that it is there explicitly stated that his Honor did not, as a matter of fact, expressly charge the jury upon these points, that is, he did not state the testimony of each of the said witnesses, and specifically instruct the jury as to its character and the restricted purposes for which it was admitted.

The only charge which appears to have been given in reference to the testimony mentioned, was a statement of the general proposition that the " confession "of one defendant in the absence of another was not evidence against the latter, and that it should only be considered as against the defendant who made the confession.

This, we think, falls very far short of the great particularity required under the peculiar circumstances of cases like the present. Contrary to the general principles of evidence, hearsay-testimony of the most serious character is admitted in the trial of a case involving the life of a human being. If, as we have said, the law tolerates such a practice as it must do upon joint trials, great care should

be required of the Judge in particularly stating such testimony to the jury and specifically instructing them as to the restricted purposes of its admission.   If we are correct in the interpretation of the case as presented by the record, the hearsay-testimony was admitted, counsel presumably were allowed to discuss it, and nothing but the general proposition we have recited was charged in reference to its highly prejudicial tendency as affecting the prisoner.

Taking the charge to be as we have construed it, another objection appears by reason of the failure of the Court to give any particular instructions as to the declarations of Mitchell.   As Mitchell was not on trial, his declarations were not substantive testimony as to anyone, but they seem to have been admitted for the purpose of affecting his credit.

The declarations were not the confessions of any person, and, as the charge of the Court relates only to "confessions," it appears that this very serious hearsay-testimony (to the effect that a person not on trial had told the witness that the prisoner had fired the gun, etc.), was left to the jury without qualification or restriction.   *State* v. *Powell, supra,* and the cases there cited.   For the foregoing reasons we think that the prisoner is entitled to a new trial.

This trial occurred in May, 1889, but owing to the loss of the Judge's notes (which was, it seems, not to be attributed to him), the case upon appeal was not settled until a few days ago.   The notes have never been found, and we infer from his Honor's statement that his recollection of some of the disputed points in the settlement of the case was not altogether clear.   This leads us to believe that in his desire to be entirely fair under the embarrassing circumstances, he has, in stating the case, resolved all doubts in favor of the prisoner.   This we have remarked in justice to the intelligent and conscientious Judge who tried the case below.

New trial.