The defendants were indicted at May Term, 1911, of the Superior Court of Lenoir County, under section 3338 of the Revisal, for burning a warehouse in LaGrange.
They were tried on the indictment at October term of said (619) court, and upon failure of the jury to agree, a juror was withdrawn and a new trial ordered. They were tried a second time at January Term, 1912, of said court, and convicted.
The judge presiding sentenced each of the defendants to a term of thirty years at hard labor in the State's Prison, and they appealed.
If we were permitted to examine the evidence for the purpose of determining the guilt or innocence of the defendants, we would have grave doubts as to the propriety of sustaining the verdict of the jury.
The State had to rely upon a witness, who claimed to be an accomplice, whose evidence is unsatisfactory and has very little corroboration.
This witness gives the following account of the burning:
"Sunday, before the fire, I came downtown, and when I got there, there was Lonnie Millican, Jim Britt, and Nick Joyner on the platform talking — the depot platform. I walked up there and asked them to let met get in what they were talking about, and Lonnie said: `All right, if you can keep a secret.' He said the white folks didn't like them and he was going to get even. I asked how he was going to get even, and he said he was going to burn the town. I said I would watch. I cannot tell what time it was. I don't know exactly. Nobody but these three boys when I got there. When I said I would watch, Lonnie and Jim went on, and then Nick and I went on. Just went down to *Page 519 
Wooten's alley, Lonnie and Jim first, and then me and Nick. Lonnie told me where to stand when we got there. Nick goes on between Mr. Barwick's and the bank. I stood at the alley towards Front Street, Nick was between Barwick's and the hotel there, Lonnie and Jim went back behind Mr. McDonald's warehouse, as far as I could see them. We went in the alleyway. They told me they were going to burn the town, that the white folks didn't like them. I told them I would watch. After they went, I saw Jim raking up trash. I could not see exactly, on account of Lonnie's overcoat; I could not half see for his overcoat. Don't know where he put the trash. They came back and then went behind Mr. Sim Wooten's store. I (620) went out on Front Street then. I could not tell how close they were to warehouse. I don't know how close — pretty close to it. I heard people holler `fire' when I went on Front Street. Nick and I went about the same time and heard them then. When I got back, Mr. McDonald's building was burning and Mr. Barwick's had caught. Had gone about half a block before alarm of fire. No, sir; it wasn't dark when I went back behind the warehouse and was watching. You could see anybody behind there."
In addition to his confession that he was an accomplice, he was further discredited by his admission that he was indicted, and employed a lawyer to defend him, telling him that he was not connected with the fire, and the fact that he had been taken out of prison several times and examined by officers of the law, and was finally liberated without a trial.
If this statement is true, the defendants, without previous conference with him, told him at once, upon his approaching them, of their purpose to burn the town, and he, without motive, agreed to watch, and all of them went immediately, before it was dark, and set fire to a warehouse, which was overlooked by a hotel and in a populous community.
In addition to this, at least one of the defendants offered evidence of an alibi, which, if believed, was complete.
We have given a brief statement of the evidence, in order that the bearing of the exceptions relied on by the defendants may be understood, as our duty is limited to the consideration of the alleged errors in law, and in cases like this we have no power to review the verdict of the jury.
The first exception is to the refusal of his Honor to order a severance.
As was said in S. v. Oxendine, 107 N.C. 783, and in S. v. Carrawan,142 N.C. 576: "The refusal of the court to grant a severance is not reviewable, except in case of gross abuse, and no such abuse appears in this case," and, therefore, the exception cannot be sustained. *Page 520 
His Honor excluded evidence to prove that, after the imprisonment (621) of the defendants, there were other fires at LaGrange, and this is the basis of the second, third, fifth, sixth, and fourteenth exceptions.
The fact that there were other fires at LaGrange, standing alone, could have no probative force, and, if there were such fires, there was no effort to prove that they were not accidental, and were incendiary.
If, however, such evidence had been offered, it would have been incompetent, as it would introduce other and different issues and would have no tendency to prove the guilt or innocence of the defendants.
If the defendants could offer evidence that, after their imprisonment, there were other fires at LaGrange that were incendiary, the State must be permitted to contradict, and if the defendants establish their contention, it would prove nothing, except that there were others than the defendants who would commit crime, which would not exculpate them.
The case of S. v. Smarr, 121 N.C. 669, seems to be in point against the defendants, in which it was held that on the trial of one for burglary it is not competent for him to show that other burglaries were committed in the same neighborhood about the same time, and it has been held uniformly in this State that evidence much stronger than that offered by the defendants of a kindred nature, which would prove that another committed the crime charged, is not competent unless it is of such character as to exclude the guilt of the accused. S. v. Davis, 77 N.C. 483; S. v.England, 78 N.C. 554; S. v. Baxter, 82 N.C. 604; S. v. Beverly, 88 N.C. 633;S. v. Lambert, 93 N.C. 623.
The defendants further contend that although his Honor excluded evidence as to other fires, he called them to the attention of the jury, and told the jury to consider them, by stating that the contention of the State was that the defendant Millican had shown ill-will towards the people there, "manifested after this fire and at other times when there had been a fire at LaGrange," and that from all these facts and circumstances the State contended that the defendants were guilty.
This is, in our opinion, a misconception of the charge. His (622) Honor did not instruct the jurors that they could consider evidence of other fires, but that the State contended that the defendant Millican had manifested ill-will towards the people of LaGrange, and that this conduct of the defendant, if found to exist, could be considered, which was not erroneous.
The exclusion of the evidence as to the length of time the defendants had been in prison, the subject of the fourth exception, was proper, there being no contention that they were confined at the time of the burning; and the twelfth exception is equally untenable, because, if *Page 521 
competent to prove that the State took a position at the former trial inconsistent with that contended for in this, the witness, by whom it was attempted to be proven, said he did not remember hearing anything at the former trial, and, therefore, could not know what the contention of the State was.
The seventh, eighth, ninth, tenth, and eleventh exceptions are to impeaching questions asked one of the defendants, Millican, which he answered in the negative, and to the following conversation detailed by him: "I was talking to two colored men from here, Will Philips and Tom Mayor. They were asking about going up to a lady's house, and I said I didn't have time to go, but I would go later if they would wait. They said they couldn't and I said, well, I couldn't go then. They asked why they had we boys up concerning pistols. I told him that when there was a fire I helped carry out stuff, and after everything was over they were claiming that some pistols were lost and laid it on three or four of us around there. One of them said, `When I am home, I don't go to any fires,' and I said, `Hereafter nobody need say anything to me about helping.' Mr. Rouse said something about snatching me down. He said, `I will have you fixed to-night.' One of the boys said, `You had better go on,' and I went on off."
We fail to see in this anything prejudicial to the defendant, and in view of the evidence of Rouse, a witness for the State, that the defendant said, on the occasion referred to by him, that he wanted to see another fire in LaGrange, as long as the white people were so smart, it was necessary and helpful for him to give his version of the occurrence.
The other exceptions are to the refusal to give certain prayers (623) for instructions, and to parts of the charge as given, all of which we have carefully examined.
The prayers were, in substance, incorporated in the charge, which was fair and comprehensive and in accordance with precedent.
The one principally relied on is the failure to define the word "wantonly," used in the statute, under which the defendants are indicted, as a part of the description of the offense, the defendants contending, under the authority of S. v. Massey, 97 N.C. 465; S. v. Morgan, 98 N.C. 641, and other cases, that it was necessary to allege in the indictment that the burning was done "wantonly," and that this allegation would not be supplied by the use of the words "maliciously and feloniously," and if necessary to be alleged it must be proven, and that it was the duty of his Honor to so instruct the jury.
The objection is not to the indictment, which conforms to all the requirements of the law, but to the failure to charge. *Page 522 
No request was made by the defendants for his Honor to define "wantonly," and we refer to this, not for the purpose of putting our ruling on the ground of failure to make the request, but to show that it was not regarded as material, in view of the evidence.
There were only two facts in dispute before the jury: (1) Was the fire the work of an incendiary, or was it accidental? (2) If the work of an incendiary, did the defendants set out the fire?
There was no suggestion in the evidence, nor do counsel contend here, that the fire may have been caused by the defendants accidentally, and under the charge of the court the jury had to find, in order to convict the defendants, that they agreed with Dempsey Wood, colored, to burn the warehouse, and that they at once carried out the agreement, and deliberately set the building on fire, and if so, the act was of necessity wanton and malicious, and it could do no good to so describe it. In other words, his Honor would have been justified in charging the jury that, if they were satisfied that the defendants agreed to burn the warehouse, and that pursuant to that agreement they deliberately burned it, the act was wanton and malicious, and this is the only view presented (624) to the jury upon which they could convict, as appears from the charge to the jury:
"When the State prefers a charge against its citizens, it devolves upon the State to satisfy the jury from the evidence, beyond a reasonable doubt of the guilt of the defendants. . . . It devolves upon the State to satisfy you fully that the property was wrongfully, willfully, and maliciously set afire by some person or persons, and, further, to satisfy you fully from the evidence that the parties now on trial — one, or all three, or two — were the parties who set the building on fire. If you should find from the evidence beyond a reasonable doubt that the three defendants conspired and agreed together that they would set fire to and burn the house, and that the witness Dempsey Wood entered into the conspiracy and agreed to watch, and in furtherance of that agreement and conspiracy one or more of them set fire to the house, the others being present, encouraging and aiding him in doing so — and it makes no kind of difference which one did the act of setting fire to the house — all would be equally guilty. If you should find from the evidence beyond a reasonable doubt that either one set fire to the house, the others being present, aiding and assisting, either by actually doing something toward that end or watching for the protection of those doing it, they would all be guilty. . . . If any one shows that he was not there at the time of the fire, or shows such proof as shall cause you to have some doubt, return a verdict of not guilty as to such one. If all three show that, then return a verdict of not guilty as to all three. If upon *Page 523 
all the evidence you are not satisfied beyond a reasonable doubt of the guilt of one, return a verdict of not guilty as to such one, or to two or to all three, if you are not satisfied beyond a reasonable doubt."
The verdict, like the charge, must be construed with reference to the trial. Cox v. R. R., 149 N.C. 86.
Upon a review of the record, confining ourselves to a consideration of the exceptions, we must say there is no error.
No error.
Cited: S. v. Lane, 166 N.C. 338; S. v. Knotts, 168 N.C. 184; S. v.White, 171 N.C. 787; S. v. Wiggins, ib., 816.
(625)