STATE v. WILLIAM REID PANNIL, GARLAND WATT, AND CHARLES W. CURRIE.

(Filed 2 November, 1921.)

1. **Criminal Law—Larceny and Receiving—Severance—Motions—Court's Discretion—Appeal and Error.**

Where the indictment charges several defendants with larceny or receiving goods from the warehouse of the prosecutor in a connected manner, a motion to sever the trials is addressed to the sound discretion of the trial judge and his refusal of the motion is not reviewable on appeal.

2. **Criminal Law—Larceny and Receiving—Evidence—Intent—Knowledge.**

Where there is evidence that the warehouse of the prosecutor was broken into in the night and a large quantity of oats was taken therefrom, as charged in the bill of indictment, and wagon tracks led therefrom to the barns of the several defendants, wherein bags of oats were found early the next morning, with marks thereon tending to identify them as the property of the prosecutor, evidence that bags of "sweet feed" were also found there with identifying marks is competent as tending to show ownership of the goods and knowledge and intent upon the two counts in the bill of indictment of larceny and receiving of the oats.

3. **Appeal and Error—Objections and Exceptions—Instructions—Recital of Evidence.**

The recital of the testimony in the case in the summing up by the judge to the jury is an appeal to their recollection of the evidence, and where a party to the action thinks that this has inaccurately been done, he is deemed to have waived his right to except after the case has been submitted to the jury, and he has failed to call the matter to the attention of the judge at the time, and when thereafter the exception has been taken, it will not be considered on appeal.

4. **Appeal and Error—Objections and Exceptions—"Broadside Exceptions."**

A general or "broadside" exception to the charge of the judge to the jury will not be considered on appeal.

APPEAL by defendant from *Webb, J.,* at the May Term, 1921, of ROCKINGHAM.

The defendants were convicted of larceny of a large quantity of oats, the property of Nello Teer, and from the judgment upon such conviction appealed to this Court.

Exceptions seven and nine were directed to the judge's refusal to give judgment as of nonsuit at the conclusion of the State's evidence, and again at the conclusion of all the evidence.

The prosecuting witness, Nello Teer, was a contractor working upon the public roads of Rockingham County, and owning a number of mules and horses used in this work. He kept a warehouse in the town of Reidsville in which he stored a large quantity of oats and sweet feed for

his stock, and had missed oats for some time, about 300 bushels. Besides the ordinary fastenings, he nailed up the windows to the warehouse, and put a bar across the door. On the night of 11 December, 1920, the warehouse was broken into and fourteen five-bushel bags of oats were taken out. About 7 o'clock next morning he discovered the loss and secured two policemen of the town to accompany him with a search warrant in his attempt to follow the trail of the thief or thieves. A one-horse wagon had been backed up to the platform, and though it had rained the night of the theft, they followed the track of this wagon along a devious course, and first to the barn of the defendant Currie. There they found a box of oats, and certain sweet feed bags which had Teer's name on them. The box of oats contained ten or fifteen bushels, and empty bags were hanging up on a wire across the corner of the feed room. There were a dozen or more sweet feed bags with Teer's name upon them, and eight or more oat bags with his stock number on them. His stock number was Z-72, the 72 indicating the grade of the oats, and the Z, it is contended, the point to which they were shipped. The wagon track was then followed from Currie's barn to the barn in which the other two defendants kept their horses. All of the defendants ran drays in the town of Reidsville. He found in Garland Watt's feed-room three full bags and one half-full of oats. The bags had the stock number Z-72 on them. In another department in the barn there was a box that had ten bushels or more of oats in it. Several empty bags were found on that box which contained also the stock number. He saw Garland Watt's horse after Garland was arrested; observed the horse's track, and it was very much like the track made by the horse attached to the wagon: "So much like it that I thought it was the same track made by the shoe."

The defendant Pannill occupied one of the departments of a barn, in which Garland Watt had another. There were ten or twelve bushels of these oats in Will Pannill's department. Will's father, Tom Pannill, and another man had horses in this barn also. None of the defendants had worked for Teer, and he had sold no oats or sweet feed to any of them. When his oat bags were emptied, he bundled them up and shipped them to T. A. Jennings & Sons, Lynchburg, Va.

The defendants claimed that they had bought these oats from one Will, or Brer, Garland. The defendant Currie testified that Will Garland sold him two bags of sweet feed at $2.50 a bag. He did not see Will Garland any more, but when he went in the barn the morning of the search the barn was filled with the oats and the sacks were hanging where he had other sacks hung. He knew that the price of sweet feed on the market was from $3.40 to $3.60. He did not pay Will Garland for oats or sweet feed. Garland Watt claims that he bought two bags of sweet feed and one bag of oats from Will Garland on the same day

that Currie claimed to have bought his. For the three bags he was to pay Will Garland $7.50. The oats were put in his barn that night, without his knowledge. Will Pannill also claimed to have bought two bags of oats, at $2.50 a bag, from Will Garland, and found them in the barn the next morning, the morning of the search, when he went to feed. He did not pay Will Garland for them. It seems from the testimony that Will Garland had disappeared.

Defendants appealed from the judgment upon the verdict of guilty.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. M. Sharp and J. R. Joyce for defendants.*

Walker, J., after stating the case: If we follow the rule that only the State's testimony, with so much of the defendant's sustaining it, is to be considered, on a motion for judgment as of nonsuit, we are of the opinion that the evidence is amply sufficient to sustain the verdict, and the motion for a nonsuit was properly overruled.

Exception one was directed to the judge's refusal to sever the trials of the three defendants. This, however, was in the sound discretion of the court. *S. v. Southerland,* 178 N. C., 676, where it was said to have been frequently held that a motion for a separate trial of defendants charged in the same bill of indictment is a matter that must necessarily be left to the sound discretion of the trial judge. To undertake to review such rulings is impracticable, and would result in great delay in the disposition of criminal actions. It is only when there appears to have been an abuse of such discretion that this Court will entertain such exceptions and review the rulings of the trial judge. Nothing of that nature appears in this record, citing *S. v. Dixon,* 78 N. C., 558; *S. v. Parrish,* 104 N. C., 689; *S. v. Hastings,* 86 N. C., 597; *S. v. Haney,* 19 N. C., 390; *S. v. Murphy,* 84 N. C., 742. See, also, *S. v. Finley,* 118 N. C., 1161; *S. v. Oxendine,* 107 N. C., 783; *S. v. Gooch,* 94 N. C., 982. There was manifestly no abuse of discretion by the judge.

Exceptions two, three, four, five, and eight were directed to the testimony as to the sweet feed lost and the sweet feed bags with Teer's name, or number, on them in the barns of defendants. This evidence, however, tended to show knowledge and intent upon both the counts in the bill of indictment. The Court has recently discussed this question very fully in *S. v. Simons,* 178 N. C., 679, and in *S. v. Stancill, ib.,* 683, citing all the cases. It was held in *S. v. Adams,* 138 N. C., 693: "True it is that evidence as to one offense is not admissible against a defendant to prove that he is also guilty of another and distinct crime, the two having no relation to or connection with each other. But there are well defined

exceptions to this rule. Proof of another offense is competent to show identity, intent, or *scienter,* and for other purposes," citing *S. v. Murphy,* 84 N. C., 742; *S. v. Parish,* 104 N. C., 692; *S. v. Weaver,* 104 N. C., 761; *S. v. Walton,* 114 N. C., 783, and *S. v. Graham,* 121 N. C., 623. So, in *S. v. Stancill,* 178 N. C., 686, where there is a full discussion of the subject, with citation of the authorities, it is said there, at least substantially, that the testimony as to theft of the Wilkinson tobacco was offered merely to show the felonious intent with which the defendants stole this tobacco, and not to prove the accusation substantively. It was sufficiently connected with the main charge to render it competent for this purpose. It was all taken to Raymond Stancill's, the common storehouse for the loot of these defendants. It was but a part of a series of transactions carried out in pursuance of the original design, and it was contemplated by them in the beginning, that they should plunder the tobacco barns in the neighborhood, and this was one of them. The jury might well have inferred this common purpose from the evidence. Robbing Wilkinson was a part of the common design, and done in furtherance of it. Proof of the commission of other like offenses to show the *scienter,* intent, or motive is generally competent when the crimes are so connected or associated that this evidence will throw light upon that question. So it is with the oats and sweet feed in this instance, the two cases being alike.

The one inference to be drawn from the evidence is that defendants stole the oats and sweet feed in the night time under the cover of darkness, as the theft was discovered early in the morning, and the warehouse was locked and bolted the night before. The jury did not believe the story about the defendant's buying the goods at a greatly reduced price from Will Garland, for, if they had believed it, they would have convicted the defendants upon the second count in the indictment for receiving the goods knowing them to have been stolen, there being ample evidence to warrant it, because the dealing with Garland being necessarily in the night time, and the price asked being considerably below the market quotation, cast grave suspicion on the whole transaction. It was an incredible story at the best, and the jurors were not in a credulous mood. But they concluded that Garland was a mythical man, and their story about him a pure fabrication, and consequently convicted them of the principal felony, which verdict is abundantly supported by the testimony.

Exceptions ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, and seventeen were addressed to the judge's recital of the evidence. If there was any error or shortcomings in it, his attention should have been called to it at the time. A misrecital of the testimony by a judge in his summing up to the jury is no ground of new trial; such summing up

being an appeal to their recollection. It is the right of counsel, in a proper manner and at a proper time, to correct such mistake by calling the attention of the judge to it, in the presence of the jury, before the cause is finally committed to them; and a failure then to make the correction is a waiver of all right to make it thereafter. *Wheeler v. Schroeder,* 4 R. I. Reports (vol. 1), 383.

Exception eighteen relates to the following clause in the judge's charge: "And they admit, that is, Currie and Pannil, that they purchased some oats from Garland the afternoon before." As a matter of fact, Pannil and Watt admitted that they purchased oats from Garland the afternoon before. "Currie denied that he bought any oats, but claimed to have bought two bags of sweet feed from Garland." This, however, was a lapse of the tongue, and an error in the recital of the testimony, which should have been brought immediately to the attention of the court. The judge told the jury expressly that "You will try this case solely upon the evidence," and the judge himself, in the very next sentence, corrects his error in regard to Currie. After reciting the contentions of the State and of the defendants, he said to the jury, "When you go out to consider your verdict, you will discard everything except the evidence in this case." This exception is covered fully by what has been said above, in regard to exception four, and including two to five and eight, and the authorities there cited are applicable here.

Exceptions nineteen and twenty were directed to the recital of the State's contentions, while twenty-one and twenty-two relate to the recital of the defendant's contentions. In the state of the record these cannot be assigned as errors here, and what we have said above as to exceptions ten to seventeen, and the authorities there cited, apply equally in this instance.

Exception twenty-three has been sufficiently considered in our discussion of exceptions seven and nine.

Exception twenty-four was directed to what was a clear and accurate statement by the judge of the reasons why the evidence, in regard to sweet feed and the bags, was admissible, and at the same time a warning to the jury, that defendants were not indicted for stealing bags of sweet feed, but bags of oats. The evidence was admitted simply as a circumstance to be considered by the jury when weighing the evidence as to whether or not the defendants were guilty of the larceny of oats or guilty of receiving them, knowing at the time that they were stolen.

Exception twenty-five was a general or "broadside" exception to the charge, and as such will not be considered by this Court.

This was a bold robbery, done with deliberation, but the defendants were so hurried in its commission, or for some other reason, they failed to conceal or remove the marks of identification on the bags, and it

makes little difference whether they were oat bags or sweet feed bags. Those that were marked were found with other bags of a kind taken from the warehouse. They were there the night of the robbery, and they were not there the next morning when it was first discovered that the house had been entered and rifled of a part of its contents. The marked bags identified those unmarked, because (*noscitur a sociis*) they are known by their companions as a man is said to be known by the company he keeps. What difference does it make whether the mark on the bags was the prosecutor's name or his stock number, so that it identified the bags as the property which had been stolen from him. The numbers were as sufficient for the purpose as his name, but defendants, if they saw them on the bags, did not appreciate their significance and were thus entrapped by their own ignorance, which not infrequently happens in such cases.

The substantial and pivotal objection to the trial of the case below is based upon a misapprehension concerning the competency and relevancy of the testimony, as to marks on the sweet feed sacks, which we have shown was clearly admissible. That is sharply made the focus of criticism, and all possible emphasis laid upon it, as not only important but as being prejudicial to the defendants. We have met this objection sufficiently, and no more comment is required.

The other exceptions, including those to the instructions, are without any real merit. The charge was full and fair to both sides, and is not subject to the objections which are made to it. When the judge correctly ruled upon the evidence, the issue became very largely one of fact, and there was an abundance of evidence to support the verdict.

We can find no error in the case or record.

No error.