STATE v. BEN MUNDY.

(Filed 21 December, 1921.)

1. **Intoxicating Liquors — Statutes — Criminal Law—Indictments—Separate Offenses—Motions—Verdict—Appeal and Error.**

Objection to a bill of indictment on account of duplicity comes too late after verdict, and where it is to the charge of two separate offenses in the same bill, one under C. S., 3407, for unlawfully permitting a still to be set up for operation on the defendant's land; and the other for unlawfully manufacturing spirituous liquor, C. S., 3409, and there is sufficient evidence on the latter count, a judgment upon the verdict on that count will be sustained.

**2. Appeal and Error—Evidence—Declarations—Corroborative Evidence—Spirituous Liquor—Intoxicating Liquor.**

While the accused may testify as to his consistent declarations made to others, to corroborate his testimony of innocence of the offense charged against him, its exclusion will not be held for reversible error if it could not have affected in any way the verdict of guilty; as to whether his declaration accusing another of manufacturing, etc., spirituous liquor, of which he himself was accused, comes within the rule, *Quære?*

APPEAL by defendant from *Harding, J.,* at the May Term, 1921, of MECKLENBURG.

Criminal action. Defendant was convicted on the following bill of indictment:

"The jurors for the State, upon their oath present that Ben Mundy, late of Mecklenburg County, at and in said county, on 7 March, 1921, unlawfully and willfully did allow a distillery to be erected upon premises in his possession and under his control, and did manufacture, distill, and make spirituous and intoxicating liquors." ·

The evidence, in chief, on the part of the State is as follows:

V. P. Fesperman testified: "I am deputy sheriff of Mecklenburg County. From the information that I received, on 7 March, 1921, I went out in the country to the premises of the defendant and examined his premises. In the front room of the defendant's house, in a closet on the left-hand side, I found a still cap, two connecting pipes, and a lot of new sheet copper; piled upon this was four hundred pounds of sugar in one-hundred-pound sacks. In this room there were two empty sugar sacks, which had recently contained sugar. There was another empty sugar sack in another room. The empty sacks were like the sacks that had sugar in them, and when shaken the sugar sprinkled out. I found a large, new copper funnel in the safe in the dining-room. (This copper funnel was introduced in evidence, and a size shown to the jury. The still cap and pipes were also introduced in evidence and shown to the jury.) I also found a still worm concealed under the hay in the barn. The still worm was wet at the time I found it, and had upon it the odor of whiskey, and had been used in making whiskey either the night before or the day before. It had meal and other evidence of its use upon it.

"The defendant told me that he knew nothing about the worm in the barn, and also told me that he knew nothing about the sugar in the closet. I told him that I would take the sugar, as it did not belong to him; he then said that it was his sugar. I arrested the defendant, and we went over to Mr. Cross's in order to get Mr. Cross to go on the defendant's bond. The defendant then told Mr. Cross that he did not know the still or worm was there; that a fellow had left it there, and when Mr. Cross asked him who had left it there, he said that he did not know his name.

"All of the articles, viz., the worm, the funnel, the still cap, the connecting pipe, which were found on the premises were introduced in evidence in court.

"Cross-examination: I went to the defendant's house in the daytime. Mr. and Mrs. Mundy and the children were not there at home. There was a young man there about eighteen years old called Babe Stillwell. He told me that he stayed there, and that he occupied the left-hand front room. The defendant came home about five o'clock, while I was still there, and I arrested him."

Defendant, a witness in his own behalf, testified as follows: "I was in Charlotte, having brought my wife to town the day the sheriff was there. I found Sheriff Fesperman at my house when I returned home. He told me what they had found. I knew nothing about the cap, the worm, or any of the stuff being there. I knew nothing about the worm in the barn under the hay. I had nothing to do with making whiskey either directly or indirectly.

"Babe Stillwell was staying at my house, had been there about three weeks, and he roomed in that room where the cap and other stuff was found. I knew nothing about the worm in the barn under the hay. I bought the four sacks of sugar a few days before that. One of the sacks was for myself and the other three sacks were for three neighbors. I got the sack of sugar so that we could have it for canning purposes. I do not know about the empty sacks, except I know I bought Irish potatoes a few days before that, and they were put in sugar sacks, and I planted the potatoes and the sacks were there somewhere.

"Babe Stillwell had my automobile out the night before, all night, and brought it back the next morning about 11 o'clock, and then I brought my family to Charlotte in the automobile and left Stillwell at home. I did not know that he was engaged in making liquor, or that he had placed the still on my premises."

At this point defendant was asked, What did you say to Stillwell? Objection by State. Objection sustained, and defendant excepted.

· Attorneys for defendant stated that the defendant proposed to prove by his own evidence that after he had been apprized of the fact that the still was out there, that he upbraided Stillwell and told him he had no business bringing the still to his house; that he had gotten witness into trouble.

There was judgment on the verdict, and defendant appealed, assigning for error, first, that the bill was defective in that it attempted to charge, in one and the same count, two distinct offenses. One under C. S., 3407, for unlawfully permitting a still to be set up for operation on one's land, and the other for the unlawful manufacturing of spirituous liquors

contrary to C. S., 3409; and second, that the declarations of defendant and Stillwell should have been received in corroboration of defendant's testimony denying his guilt.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Stewart & McRae for defendant.*

HOKE, J. It is held with us that an objection to the bill of indictment, on account of duplicity, comes too late after verdict. The bill undoubtedly contains a proper charge of the unlawful manufacture of spirituous liquors under C. S., 3409, and as a matter of form this will suffice to uphold the judgment. *S. v. Burnett,* 142 N. C., 577; *S. v. Cooper,* 101 N. C., 684. And the objection to the ruling of the court on the question of evidence must also be disallowed. There is doubt if the proposed declaration comes within the principle permitting corroboration by consistent declarations of a defendant who has testified. They seem to be rather an effort to fix the crime on a third party, Babe Stillwell, but if it be conceded that the evidence was competent there was no testimony from Stillwell or any other that they heard defendant make these alleged statements. And on the facts presented in the record, it is clear that the excluded evidence added nothing to the testimony of the defendant already received, and that if the same had been admitted it could have had no appreciable effect on the result. In *Goins v. Indian Training School,* 169 N. C., 739, speaking to an exception of this character, the Court said: "Besides, if the evidence had been properly excepted to, it is not a matter of sufficient importance that we could see it would have probably affected the result. Courts do not now grant new trials upon merely technical objections, unless the error is of sufficient importance to justify a belief that if the error had not been committed the result reasonably would have been different." A ruling that finds support in many of our recent decisions. *Powell v. R. R.,* 178 N. C., 243-248; *Brewer v. Ring,* 177 N. C., 476. In this last case *Walker, J.,* delivering the opinion has well said: "Courts do not lightly grant reversals, or set aside verdicts, upon grounds which show the alleged error to be harmless, or where the appellant could have sustained no injury from it. There should at least be something like a practical treatment of the motion to reverse, and it should not be granted except to subserve the real ends of substantial justice," citing Hilliard on New Trials (2 ed.), secs. 1 to 7.

We find no reversible error, and the judgment against the defendant must be affirmed.

No error.