STATE OF NORTH CAROLINA v. MICHAEL ANTHONY MAY

No. 62

(Filed 13 June 1977)

1. Criminal Law § 34.7— murder during robbery — earlier robbery — admissibility to show intent

In a prosecution of defendant for murder committed during the perpetration or attempt to perpetrate a robbery of a confectionery store employee, the trial court did not err in allowing evidence of defendant's participation in an armed robbery at a dry cleaning business five days earlier in which defendant allegedly used the same sawed-off shotgun which he used in the confectionery store robbery, since that evidence was competent to show defendant's intent and *quo animo;* furthermore, admission of the evidence of the robbery at the dry cleaners did not violate due process by denying defendant a fair trial.

2. Criminal Law §§ 101.2, 114.2— defendant's age — effect on juror — allowing juror to continue to serve — jury instruction — no expression of opinion

Where a juror in a first degree murder prosecution informed the judge during trial that she had heard outside of court that defendant was seventeen years of age and had she known of defendant's age during jury selection "her opinion concerning the death penalty might have been different," the trial court did not violate G.S. 1-180 by permitting the juror to continue to serve and then granting the State's request for a supplemental instruction concerning defendant's age, since there was no evidence that the juror who was permitted to remain on the jury after having spoken to the judge ever conveyed her concern or knowledge to the other jurors; her statement to the judge was in all probability favorable to defendant; the judge expressly found that the juror could continue to serve on the jury without prejudice to the State or defendant; and the judge's instruction with respect to defendant's age was simply an explanation of the law as it applied to the case.

3. Criminal Law § 112.4— defendant's guilt of separate offense — degree of proof required — jury instructions proper

In a prosecution for murder committed during the perpetration or attempt to perpetrate an armed robbery where the State, for the purpose of showing intent, offered evidence of defendant's commission of another armed robbery, the trial court did not err in failing to require the jury to be satisfied beyond a reasonable doubt that defendant committed the other robbery, since every fact or circumstance relied upon by the State need not be proved beyond a reasonable doubt, though each element, of which the facts and circumstances of a case are a part, must be so proved.

4. Criminal Law § 34.7— defendant's guilt of separate offense — connection with offense charged — determination for trial judge

In a prosecution for murder committed during the perpetration or attempt to perpetrate an armed robbery of a confectionery store

State v. May

employee where the State offered evidence of defendant's commission of an earlier armed robbery at a dry cleaning establishment, the trial court did not err in failing to instruct the jury that it must find a "causal relation or logical and natural connection between the two acts [the robbery at the cleaners and the murder at the confectionery]" since the determination of the connection between the robbery and the murder was for the trial judge in making his determination of the admissibility of the robbery evidence.

5. Constitutional Law § 30— discovery — evidence allegedly withheld — evidence not material or exculpatory

Defendant's contention that the State failed to comply with his pretrial request for voluntary discovery is without merit where the evidence allegedly withheld was not shown to be material or exculpatory. G.S. 15A-902.

6. Criminal Law § 104— defendant's exculpatory statements — introduction by State — rebuttal by State proper

When the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements; however, the introduction by the State of an exculpatory statement made by a defendant does not preclude the State from showing the facts concerning the crime to be different, and does not necessitate a nonsuit if the State contradicts or rebuts defendant's exculpatory statement.

7. Homicide § 21.6— first degree murder — defendant's exculpatory statement — sufficiency of evidence

In a prosecution for murder committed during the perpetration or attempt to perpetrate an armed robbery, evidence was sufficient to be submitted to the jury notwithstanding the State's introduction of defendant's exculpatory statement which tended to show self-defense, since the State offered evidence on each element of murder in the perpetration of a felony and also offered evidence sufficient to contradict and rebut defendant's exculpatory statement.

8. Homicide § 19.1— self-defense — deceased's criminal record — testimony properly excluded

In a prosecution for murder committed during the perpetration or attempt to perpetrate an armed robbery where defendant contended that he acted in self-defense, defendant was not prejudiced by the trial court's refusal to allow a witness to respond to defendant's question concerning the witness's knowledge of the victim's prior convictions for assault with a deadly weapon, since the excluded testimony was that the witness knew nothing about the victim's prior criminal record, and such testimony was of no probative value and added nothing to defendant's contention that he acted in self-defense.

9. Homicide § 12.1—first degree murder — indictment in statutory language — premeditation and deliberation — perpetration of felony

An indictment drawn in accordance with G.S. 15-144 is sufficient to sustain a verdict of guilty of murder in the first degree based

upon a finding that defendant killed with malice, premeditation and deliberation, or that defendant killed in the perpetration or attempted perpetration of any arson, rape, robbery, burglary or other felony.

**10. Constitutional Law § 80; Homicide § 31.1— first degree murder — life imprisonment substituted for death penalty**

A sentence of life imprisonment is substituted for the death sentence imposed upon conviction of first degree murder.

Justice EXUM dissenting.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Long, J.,* at the 17 November 1975 Session of FORSYTH Superior Court.

Defendant was tried and convicted of first degree murder of Elijah Whitaker Jones and was sentenced to death. This case was docketed and argued as No. 18 at the 1976 Fall Term.

The State introduced evidence tending to show that on 13 February 1975 Mrs. Etta G. Ross saw defendant enter Jones' Confectionery store on North Trade Street in Winston-Salem. Mrs. Ross then heard a "boom" and saw defendant leave the store. She noticed that defendant appeared to be pulling up his belt as he left and that he was walking with a limp. Defendant walked around the store and across a vacant lot in the direction of Main Street. Shortly thereafter, Elijah Whitaker Jones, proprietor of Jones' Confectionery, was found dead in the store. His death was caused by injuries inflicted from a shotgun blast which opened a hole in his chest approximately 4.8 centimeters in diameter.

Mr. Paul Richard Hanes testified that during the early afternoon of 13 February he was delivering mail along Main Street in Winston-Salem. While so engaged, Mr. Hanes witnessed defendant staggering up Main Street. After several steps, defendant fell in a state of semiconsciousness. Mr. Hanes and several other men went to defendant's aid. The men discovered a sawed-off shotgun tucked in the waistband of defendant's trousers. One of the men checked the gun to see if it was loaded. The gun was found to contain one spent shell and one live round. Upon further examination of defendant, it was determined that he had been shot in the chest. Defendant was then taken to the hospital.

State v. May

Upon defendant's release from the hospital, he made a statement to police. In this statement, defendant stated that he had entered Jones' Confectionery to purchase a package of cigarettes. After purchasing the cigarettes and receiving his change, defendant turned and began walking toward the door. As he looked over his shoulder, defendant saw that Mr. Jones was about to shoot him with a pistol. He turned his body, and Mr. Jones shot defendant on his left side. Defendant then took the sawed-off shotgun from his right hip pocket and shot Mr. Jones. At this time, defendant stated that he was between twelve and fifteen feet from Mr. Jones. Defendant then put the gun back in his pants and staggered to Main Street.

The State further offered the testimony of Katie Ferguson who testified that she was employed at the XL Cleaners in Winston-Salem. At approximately 2:15 p.m. on 8 February 1975, Ms. Ferguson stated that defendant entered the cleaners and asked for laundry in a fictitious name. Defendant then brandished a sawed-off shotgun and asked for, and received, the money contained in the cash register. Ms. Ferguson then identified the sawed-off shotgun used in the XL Cleaners robbery as being the same gun that was recovered from defendant as he lay prostrate upon Main Street on 13 February. This identification was corroborated by Ms. Ferguson's prior identification of the gun from photographs shown to her by police officers.

Other facts necessary to the decision of this case will be set forth in the opinion.

*Attorney General Rufus L. Edmisten and Assistant Attorney General Charles M. Hensey for the State.*

*David B. Hough for defendant appellant.*

MOORE, Justice.

[1] Defendant first contends that the evidence of his participation in the robbery of the XL Cleaners on 8 February 1975 was improperly admitted and that the admission of such evidence constitutes reversible error. This contention is based upon defendant's assertion that the evidence was not probative of any issue in the case and was introduced solely to inflame the jury, to the prejudice of defendant.

In the oft-cited case of *State v. McClain,* 240 N.C. 171, 173, 81 S.E. 2d 364, 365 (1954), Justice Ervin set forth the well established rule "that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. [Citations omitted.]" There are, however, certain equally well established exceptions which permit the admission of evidence of the commission of other offenses. *State v. McClain, supra,* and cases cited therein. *See also* 1 Stansbury, N. C. Evidence §§ 91, 92 (Brandis rev. 1973) ; 1 Wharton, Criminal Evidence §§ 240-264 (13th ed. 1972). In present case, one exception which is set out in *State v. McClain, supra,* at 175, 81 S.E. 2d at 366, is relevant to defendant's appeal:

"2. Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused. [Citations omitted.]"·

As stated in *State v. Fowler,* 230 N.C. 470, 473, 53 S.E. 2d 853, 855 (1949) :

"[P]roof of the commission of other like offenses is competent to show the *quo animo,* intent, design, guilty knowledge or *scienter,* or to make out the *res gestae,* or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. [Citations omitted.]"

In determining whether another offense is properly admitted into evidence, we are guided by the following principle:

" ' . . . The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. . . . Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally

spurious presumption of guilt in the minds of the jurors.' " *State v. McClain, supra,* at 177, 81 S.E. 2d at 368.

In the case at bar, defendant was convicted of murder committed in the perpetration of a felony under G.S. 14-17, which, in pertinent part, provides:

> "A murder which shall be . . . committed in the perpetration or attempt to perpetrate any . . . robbery . . . or other felony . . . shall be deemed to be murder in the first degree and shall be punished with death. . . . "

Thus, in present case, the State had the burden of proving beyond a reasonable doubt that defendant murdered Elijah Jones during the perpetration or attempted perpetration of an armed robbery. *See State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975) ; *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435 (1970) ; *State v. Lane,* 166 N.C. 333, 81 S.E. 620 (1914).

Under G.S. 14-87, an armed robbery is defined as the taking of the personal property of another in his presence or from his person without his consent by endangering or threatening his life with a firearm, with the taker knowing that he is not entitled to the property and the taker intending to permanently deprive the owner of the property. An attempted armed robbery occurs when a defendant "with the requisite intent to rob, does some overt act calculated and designed to bring about the robbery, thereby endangering or threatening the life of a person." *State v. Price,* 280 N.C. 154, 157-58, 184 S.E. 2d 866, 869 (1971). By the terms of G.S. 14-87, the offense is complete if there is an attempt to take personal property by use of firearms or other dangerous weapons. *State v. Rogers,* 273 N.C. 208, 159 S.E. 2d 525 (1968). The attempt itself is a violation of the statute and is a felony. To sustain its burden of proof that defendant was involved in perpetrating or attempting to perpetrate a robbery, the State was required to show that defendant possessed a specific intent to rob Elijah Jones.

In *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47 (1972), the State introduced evidence that defendant and two cohorts entered a Gulf station in Charlotte and endeavored to rob the attendant by the threatened use of a pearl-handled pistol. The attendant began to "tussle" with one of the would-be robbers and successfully foiled the robbery. Defendant testified that the "tussle" was not caused by an attempted robbery, but rather

was caused by a dispute over a refund alleged to be due from a vending machine. In rebuttal, the State introduced testimony concerning the defendant's participation in the robbery of a convenience store, which occurred about three weeks prior to the robbery of the Gulf station. It appeared that during the convenience store robbery defendant had acquired the pearl-handled pistol which was used in the Gulf station robbery. In upholding the admission of the evidence concerning the robbery of the convenience store, this Court held that the convenience store robbery was competent as substantive evidence of defendant's intent at the time he entered the Gulf station. The Court further held that this intent was a critical disputed element of the State's attempted robbery case, and that the evidence of the prior robbery clearly tended to prove intent. *See State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973) ; *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735 (1972) ; *State v. Fowler, supra; State v. Beam,* 184 N.C. 730, 115 S.E. 176 (1922) ; *State v. Pannil,* 182 N.C. 838, 109 S.E. 1 (1921) ; *State v. Simons,* 178 N.C. 679, 100 S.E. 239 (1919) ; *State v. Parish,* 104 N.C. 679, 10 S.E. 457 (1889) ; *State v. Murphy,* 84 N.C. 742 (1881), for similar cases. *See also Annot.,* 42 A.L.R. 2d 854, 858 (1955), and later case service for a compilation of cases admitting evidence of other offenses to show intent.

In the case at bar, we are of the opinion that the evidence of defendant's participation in the robbery at the XL Cleaners was admissible. At trial, there was evidence of overt acts designed to bring about the robbery and endanger human life. Defendant entered Jones' Confectionery carrying a sawed-off shotgun concealed in his trousers. While in the store, defendant shot the proprietor at close range and then fled on foot. When he was apprehended, he was found to possess a fresh pack of cigarettes but no money or identification. Further, defendant lied as to his name and address when questioned by police officers. These acts furnish a sufficient basis for an inquiry into defendant's state of mind when he entered the store. The evidence of the robbery at the XL Cleaners, during which defendant used the same sawed-off shotgun as in present case, sheds light upon defendant's intent and *quo animo.* The XL Cleaners evidence clearly tends to prove a material, hotly contested and crucial issue in the State's case. Thus, under the facts of this case, we hold that the requisite connection between the extraneous criminal transaction and the crime charged exists and

State v. May

makes the evidence of the XL Cleaners robbery admissible on the question of intent.

In his charge, the trial judge limited the use of the XL Cleaners robbery to the issues of intent and identity. Because of our disposition of the case on the issue of intent, we do not deem it necessary to decide whether the admission of the evidence to show identity was proper. *But see State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969). *See also* 2 Stansbury, N. C. Evidence § 166 (Brandis rev. 1973). There was never any issue concerning identity raised during trial. In fact, defendant openly admitted that he shot Jones. Hence, if any error was committed by instructing the jury to use the evidence on the issue of identity, it could not have reasonably affected the verdict and was harmless. *State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406 (1966).

Defendant further contends that the admission of the evidence of the robbery at the XL Cleaners violated due process by denying him a fair trial. To support his position, he cites *Boyd v. United States,* 142 U.S. 450, 35 L.Ed. 1077, 12 S.Ct. 292 (1892), wherein the United States Supreme Court held that, under the facts of that case, evidence of five prior robberies committed by one or both defendants was inadmissible because the evidence "did not, in the slightest degree, elucidate the issue before the jury, namely, whether the defendants murdered John Dansby. . . . " 142 U.S. at 454, 35 L.Ed. at 1078, 12 S.Ct. at 294. The Court, however, further stated:

> "If the evidence as to crimes committed by the defendants, other than the murder of Dansby, had been limited to the robberies of Rigsby and Taylor, it may be, in view of the peculiar circumstances disclosed by the record, and the specific directions by the court as to the purpose for which the proof of those two robberies might be considered, that the judgment would not be disturbed, although that proof, in the multiplied details of the facts connected with the Rigsby and Taylor robberies, went beyond the objects for which it was allowed by the court. . . . " 142 U.S. at 457-58, 35 L.Ed. at 1080, 12 S.Ct. at 295.

We feel that defendant's contention may not be sustained under the holding in *Boyd.* In *Wood v. United States,* 41 U.S.

(16 Pet.) 342, 360, 10 L.Ed. 987, 994 (1842), the United States Supreme Court stated:

> "[W]here the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent, or motive in the particular act, directly in judgment. Indeed, in no other way would it be practicable, in many cases, to establish such intent or motive, for the single act taken by itself may not be decisive either way; but when taken in connection with others of the like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty."

The United States Supreme Court has permitted the introduction of evidence of other crimes to prove intent and motive in numerous cases. See Annot., 93 L.Ed. 185 (1950), for a sampling of these decisions. That Court has further held that the states are free to promulgate rules concerning relevance, and that evidence of other crimes may be admitted to establish intent if done in accordance with those rules of relevance. *Lisenba v. California,* 314 U.S. 219, 86 L.Ed. 166, 62 S.Ct. 280 (1941). *Cf. Spencer v. Texas,* 385 U.S. 554, 17 L.Ed. 2d 606, 87 S.Ct. 648 (1967), (upholding the admission of evidence of other crimes in the trial of a recidivist). Accordingly, we do not find any decision from the United States Supreme Court which would bar the admission of the evidence of the XL Cleaners robbery. Thus, we overrule this assignment.

[2] Defendant next contends that the trial judge violated G.S. 1-180 by expressing an opinion during the course of the trial and during his charge. In the record there appears an *ex parte* entry by the trial judge concerning a discussion he had with a juror. The juror approached the judge and stated that she had heard outside of court that defendant was seventeen years of age. The juror indicated to the judge that had she known of defendant's age during jury selection "her opinion concerning the death penalty might have been different." The judge instructed the juror not to disclose this information to any of the other jurors and stated that he would rule upon whether to remove her from the jury after all the evidence was received. During the course of the trial, defendant's age was received in evidence. In his entry, the trial judge found "that the out-of-

court information received by [the juror] was non-prejudicial to either the State or the defense."

After the trial judge had completed his instruction to the jury, the following transpired:

> "Are there any requests for further instructions other than those—I believe there is one request from the State here that I have not covered.
>
> MR. YEATTS: Your Honor, may I approach the bench prior to giving you that instruction?
>
> THE COURT: Yes.
>
> (Mr. Hough and Mr. Yeatts approach the bench.)
>
> THE COURT: Members of the jury, the State has requested that I instruct you that the age of the defendant is not material to the issue of his guilt. Sympathy or pity or prejudice based on age should not influence your findings in this case."

Defendant contends that by permitting the juror to continue to serve, and then granting the State's request for a supplemental instruction concerning defendant's age, an opinion was expressed adverse to defendant.

G.S. 1-180 requires that a judge "declare and explain the law arising on the evidence given in the case" and prohibits any expression of opinion by the judge. As was stated in *State v. Canipe*, 240 N.C. 60, 65, 81 S.E. 2d 173, 177 (1954):

> "Whether the conduct or the language of the judge amounts to an expressison of his opinion on the facts is to be determined by its probable meaning to the jury. . . . "
> *See also State v. Carriker*, 287 N.C. 530, 215 S.E. 2d 134 (1975) ; *State v. McEachern*, 283 N.C. 57, 194 S.E. 2d 787 (1973) ; *State v. Williamson*, 250 N.C. 204, 108 S.E. 2d 443 (1959).

We are unable to conclude that the actions of the trial judge conveyed to the jury any expression of opinion as to defendant's guilt or innocence. There is no evidence that the juror who was permitted to remain on the jury after having spoken to the trial judge ever conveyed her concern or knowledge to the other jurors. Her statement to the judge was in all

probability favorable to defendant. Further, the trial judge expressly found that the juror could continue to serve on the jury without prejudice to the State or defendant. The instruction with respect to defendant's age could not be construed as an expression of opinion. In response to a request by the State, the trial judge was simply explaining the law as it applied to the case. This assignment is overruled.

[3] Defendant next contends that the following portion of the charge was erroneous:

> "Now, if you believe this evidence, you may consider it—that is, if you believe the evidence relating to the alleged robbery of XL Cleaners, you may consider that evidence for one purpose only, or for these two purposes only, that is tending to show the identity of the person who may have committed the alleged homicide and that the defendant intended to rob Jones' Confectionery on the date in question. You may not consider the evidence relating to any robbery of XL Cleaners for any other purpose other than these limited purposes."

Under this assignment, defendant contends that by not requiring the jury to be satisfied beyond a reasonable doubt that defendant committed the robbery at the XL Cleaners, the State was relieved of its burden of proving each element of its case beyond a reasonable doubt.

In *State v. Crane,* 110 N.C. 530, 15 S.E. 231 (1892), the defendant requested that the court charge the jury as follows:

> "In this case the State relies in a large measure upon evidence of circumstances, and it is incumbent on the State, therefore, to prove all the circumstances on which it relies, beyond a reasonable doubt, and it is the duty of the jury in passing upon the guilt or innocence of the defendant to discard any and all circumstances that are not so proven."

The trial judge declined to give this instruction and the defendant excepted. In upholding the trial judge, this Court stated:

> "The prayer for instruction was properly refused. When the State relies upon a chain of circumstances, such that each circumstance is a necessary link in the chain, it would then be proper to charge that 'a chain is no stronger than its weakest link'; but when various facts and circum-

stances are relied on, as in this case, to prove a fact, it would not be correct to charge, as asked, that 'It was incumbent upon the State to prove all the circumstances on which it relies, beyond a reasonable doubt.' . . . 'upon the whole evidence,' the jury must be satisfied beyond a reasonable doubt of defendant's guilt, and if not, they must acquit him." *State v. Crane, supra,* at 536-37, 15 S.E. at 232. *See also State v. Shook,* 224 N.C. 728, 32 S.E. 2d 329 (1944) ; *State v. Trull,* 169 N.C. 363, 85 S.E. 133 (1915) ; 2 Stansbury, N. C. Evidence § 211 (Brandis rev. 1973).

From these authorities, we are of the opinion that every fact or circumstance relied upon by the State need not be proved beyond a reasonable doubt. Each element, of which the facts and circumstances of a case are a part, must be so proved. Thus, it is sufficient for conviction that the jury is satisfied upon the whole evidence that each element of the crime has been proved beyond a reasonable doubt.

Other jurisdictions have taken a similar approach where evidence of other crimes has been offered on the question of intent. In *Scott v. State,* 141 N.E. 19 (Ohio 1923), defendant was convicted of soliciting and accepting a bribe. During trial, evidence of defendant's commission of other similar offenses was introduced on the issue of intent. During the trial court's charge, the jury was instructed: "In determining the intent . . . you may consider the testimony as to other [crimes] . . . by the defendant, if any you find from the evidence has been [committed]." 141 N.E. at 25. Defendant assigned as error the omission from the charge that the other crimes must be proved beyond a reasonable doubt. In rejecting this contention, the court reasoned that, in order to convict, the State must prove each material element of the crime beyond a reasonable doubt. The State was not, however, required to prove every fact beyond a reasonable doubt. In conclusion, the court stated:

> "Now, the intent is one of the elements that must be established to prove the crime of bribery. The testimony as to other similar previous offenses committed by the defendant, not too remote in period of time, is admissible in a bribery case to prove intent. Intent, the ultimate material fact of intent, must be established beyond a reasonable doubt, and the court must so charge. To hold, however, that other similar crimes which tend to establish intent

must be proved beyond a reasonable doubt is to extend the rule far beyond all reason. If carried to its logical conclusion such a doctrine would require that every probative fact offered in the case be established beyond a reasonable doubt, which is certainly not the law." 141 N.E. at 26.

The reasoning and holding of the court in *Scott v. State, supra,* appears to represent the majority view of other jurisdictions. *See People v. Allen,* 88 N.W. 2d 433 (Mich. 1958); *State .v. Everett,* 302 N.E. 2d 723 (Ill. App. 1973); *State v. Drews,* 144 N.W. 2d 251 (Minn. 1966); *State v. Mitchell,* 545 P. 2d 49 (Ariz. 1976); *Territory v. Awana,* 28 Haw. 546 (1925); 1 Wharton, Criminal Evidence § 263 (13th ed. 1972). *But see Curry v. State,* 333 S.W. 2d 375 (Tex. Crim. App. 1960), for the minority view.

Throughout the charge in present case, the trial judge emphasized that the State bore the burden of proving each element of the crime beyond a reasonable doubt in order for the jury to find the defendant guilty. Intent was one of the elements of the crime charged. The defendant's participation in the XL Cleaners robbery was but a fact which was probative of the element of intent and, under our decisions, was not required to be proved beyond a reasonable doubt. Reading the charge as a whole, the jury was fully and properly instructed on the burden and quantum of proof necessary for conviction. *State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291 (1970); *State v. Cannon,* 227 N.C. 338, 42 S.E. 2d 344 (1947); *State v. Jones,* 227 N.C. 402, 42 S.E. 2d 465 (1947). We find no merit in this contention.

[4]   Under this same assignment of error, defendant further contends that the jury should have been instructed that it must find a "causal relation or logical and natural connection between the two acts [the robbery of the XL Cleaners and the murder at Jones' Confectionery] . . . . " For this proposition he cites *State v. Beam,* 184 N.C. 730, 115 S.E. 176 (1922). The cited portion from *State v. Beam, supra,* dealt with the factors to be used by the trial judge in determining whether the proffered testimony is admissible and competent to be introduced at trial. As was stated in *State v. McClain, supra,* at 177, 81 S.E. 2d at 368:

" ' . . . Whether the requisite degree of relevancy exists is a judicial question . . . . Hence, if the court does not

clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected.' [Citations omitted.]"

Accordingly, the determination of the connection between the XL Cleaners robbery and the Jones' Confectionery murder was for the trial judge in making his determination of the admissibility. Having properly admitted this testimony, the weight and probative force of the evidence was for the jury. *See* 1 Stansbury, N. C. Evidence § 8 (Brandis rev. 1973).

[5]  Prior to trial, defendant made a request for voluntary discovery pursuant to G.S. 15A-902. In his request for information, defendant asked for all information which "would in any manner and to any degree (no matter how slight) tend to exculpate the Defendant in this case." The State responded by giving defense counsel the opportunity to "inspect and copy or photograph any of the material or physical evidence in question."

At trial, Ms. Ferguson, the person robbed at the XL Cleaners, testified: "The police officers came to my premises after this particular incident and dusted the counter for fingerprints." Later, Ms. Ferguson also testified that she had looked at three stacks of photographs furnished by police in an attempt to identify defendant. Officer L. T. Cann stated: "I did take some fingerprints, dusted some Coca-Cola bottles that were there in [Jones' Confectionery]. I dusted one that was on the counter. I made two latent lifts from that particular bottle, meaning lifts of fingerprints." Cann further testified that the fingerprints did not match those of defendant. There was also evidence that a "gunshot test" was performed on the victim, Elijah Jones. No objection was lodged at trial to the admission of the evidence outlined above. However, defendant contends that this evidence was exculpatory and that its suppression violated *Giles v. Maryland,* 386 U.S. 66, 17 L.Ed. 2d 737, 87 S.Ct. 793 (1967), and *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963).

In *State v. Gaines,* 283 N.C. 33, 45, 194 S.E. 2d 839, 847 (1973), this Court stated:

"The standards enunciated in *Brady* by which the solicitor's conduct in this case is to be measured require us

to determine whether there was (a) suppresssion by the prosecution after a request by the defense (b) of material evidence (c) favorable to the defense. Obviously, under *Brady* a refusal to grant a pretrial motion for discovery is not reversible error unless the movant shows that evidence favorable to him *was suppressed*. In order to do so, he must certainly show what that evidence was. Defendant has made no such showing here. The solicitor stated he had no evidence favorable to the defendant and nothing in this record contradicts him. 'We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' *Moore v. Illinois,* 408 U.S. 786, 33 L.Ed. 2d 706, 92 S.Ct. 2562 (1972) ; *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972)." *See also State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975).

In the case at bar, there is no indication that the fingerprints, photographs and "gunshot test" were material or exculpatory. Defendant was afforded the opportunity to cross-examine the witnesses regarding the evidence and to place in the record how the evidence would have been material and favorable to the defense. In the absence of any such showing, this assignment must be overruled.

**[6]** Defendant assigns as error the failure of the trial court to enter judgment as of nonsuit at the close of all the evidence. Specifically, the defendant contends that he comes within the purview of the rule stated in *State v. Carter,* 254 N.C. 475, 479, 119 S.E. 2d 461, 464 (1961), that "[w]hen the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements." *See also State v. Bolin,* 281 N.C. 415, 189 S.E. 2d 235 (1972). However, the introduction by the State of an exculpatory statement made by a defendant does not preclude the State from showing the facts concerning the crime to be different, and does not necessitate a nonsuit if the State contradicts or rebuts defendant's exculpatory statement. *State v. Bolin, supra; State v. McKnight,* 279 N.C. 148, 181 S.E. 2d 415 (1971) ; *State v. Cooper,* 273 N.C. 51, 159 S.E. 2d 305 (1968) ; *State v. Bright,* 237 N.C. 475, 75 S.E. 2d 407 (1953).

On motion for judgment as of nonsuit, all of the admitted evidence must be considered in the light most favorable to the State and the State must be given the benefit of every reasonable intendment thereon and every reasonable inference to be drawn therefrom. Contradictions and discrepancies even in the State's evidence are matters for the jury and do not warrant nonsuit. *State v. Bolin, supra; State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971) ; *State v. McKnight, supra; State v. Cutler,* 271 N. C. 379, 156 S.E. 2d 679 (1967).

[7] In the case at bar, the State's evidence tended to show that on 8 February 1975, defendant had possession of the weapon (a sawed-off shotgun wrapped in black electrical tape) used in the shooting of Elijah Jones and that defendant used this weapon to rob the XL Cleaners on 8 February. Thereafter, on 11 February 1975, defendant secreted the weapon in some bushes adjacent to his house. On 13 February, defendant entered Jones' Confectionery with the murder weapon concealed in his trousers. While in the store, defendant shot the proprietor, Elijah Jones, apparently at close range. Following the shooting, defendant fled the scene of the crime. *See State v. Bolin, supra.* Defendant then lied to a police investigator about his name and address.

Defendant's statement was to the effect that he had entered Jones' Confectionery to purchase a pack of cigarettes. Defendant purchased the cigarettes—giving the proprietor Jones fifty cents and receiving two cents in change. As he was walking out the door, defendant turned and was shot by Jones with a pistol. Defendant then pulled a sawed-off shotgun from his right hip pocket and shot Jones.

Defendant offered no explanation as to why Jones, the stepfather of defendant's close friend and a man who had never been known by his neighbors to cause trouble, would shoot the defendant. Defendant stated that he purchased cigarettes and received two cents in change. Yet, defendant was found with a package of cigarettes and no change. Defendant stated that he shot Jones with a sawed-off shotgun while standing at the door of the store—approximately twelve to fifteen feet by defendant's estimation. Yet, Jones's wound was only 4.8 centimeters in diameter—indicating he was shot at close range. The State's evidence is sufficient to contradict and rebut defendant's ex-

culpatory statement, and casts great doubt upon the credibility of defendant's statement.

Considering the evidence in the light most favorable to the State, the evidence is sufficient to carry the case to the jury. As we have previously discussed in this opinion, the State introduced evidence on each element of murder in the perpetration of a felony. With respect to defendant's exculpatory statement, we turn to the words of Justice Exum in *State v. Hankerson,* 288 N.C. 632, 638, 220 S.E. 2d 575, 581 (1975):

> "While none of these circumstances taken individually flatly contradicts defendant's statement, taken together they are sufficient to 'throw a different light on the circumstances of the homicide' and to impeach the defendant's version of the incident. The State is not bound, therefore, by the exculpatory portions of defendant's statement. The case is for the jury."

Hence, it was for the jury to say whether defendant's guilt was established beyond a reasonable doubt. The jury has spoken.

[8] Mrs. Etta Ross, a witness for the State, testified without objection that she had never seen any trouble in the deceased's store in her life. On recross-examination, Mrs. Ross further testified without objection: "I never saw him give any trouble to anybody in that store. I have never heard of him giving any trouble, never seen him giving any trouble in that store. I have not heard him give any trouble to anybody, anywhere at all." Mrs. Ross was then asked by defendant's lawyer: "Mrs. Ross, were you aware of the fact that Mr. Jones had been arrested and convicted on four different occasions of assault with a deadly weapon?" The State objected to this question and the objection was sustained. Mrs. Ross was allowed to answer for the record: "No, I don't know nothing about it."

Defendant contends that prejudicial error was committed by denying him the opportunity to place before the jury the response of Mrs. Ross to the question concerning Elijah Jones's past criminal activities. Assuming for the sake of argument that such matters could be brought out in this case, we find no prejudicial error in the exclusion of the evidence. The excluded testimony of Mrs. Ross was of no probative value and added nothing to defendant's contention that he acted in self-defense. Mrs. Ross stated that she did not know of any criminal

State v. May

record Elijah Jones may have had. As was stated in *State v. Mundy*, 182 N.C. 907, 910, 110 S.E. 93, 94 (1921), "it is clear that the excluded evidence added nothing . . . and that if the same had been admitted it could have had no appreciable effect on the result." Mrs. Ross's testimony could not have affected the result of this case. Hence, we overrule this assignment.

Defendant next insists that the trial court erred in instructing the jury on the doctrine of felony-murder since the bill of indictment only charged:

"THE JURORS FOR THE STATE UPON THEIR OATH DO PRESENT, That Michael Anthony May, late of the County of Forsyth, on the 13th day of February, 1975, with force and arms, at and in the said County, feloniously, willfully, and of his malice aforethought, did kill and murder Elijah Whitaker Jones contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

[9] The indictment set out above is in the form expressly authorized by G.S. 15-144. In numerous cases, this Court has held that an indictment drawn in accordance with G.S. 15-144 is sufficient to sustain a verdict of guilty of murder in the first degree based upon a finding that defendant killed with malice, premeditation and deliberation, or that defendant killed in the perpetration or attempted perpetration of any arson, rape, robbery, burglary or other felony. *See, e.g., State v. Mc-Laughlin*, 286 N.C. 597, 213 S.E. 2d 238 (1975); *State v. Frazier*, 280 N.C. 181, 185 S.E. 2d 652 (1972); *State v. Lee*, 277 N.C. 205, 176 S.E. 2d 765 (1970); *State v. Haynes*, 276 N.C. 150, 171 S.E. 2d 435 (1970). If defendant had deemed it necessary, he could have moved for a bill of particulars to ascertain the theory which the State intended to rely upon at trial. *State v. Haynes*, 276 N.C. 150, 171 S.E. 2d 435 (1970); G.S. 15A-924, 925. This was not done. Hence, we find no merit in this assignment.

[10] In *Woodson v. North Carolina*, 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975)—the statute under which defendant was indicted, convicted and sentenced. Thus, by authority of the provisions of Section 7, Chapter 1201 of the 1973 Session Laws (1974 Ses-

State v. May

sion), a sentence of life imprisonment must be substituted for the death sentence.

Our examination of the entire record discloses no error affecting the validity of the verdict returned by the jury. Defendant's conviction must therefore be upheld. The sentence of death imposed upon defendant must be vacated, however, and life imprisonment imposed. To the end that a sentence of life imprisonment may be substituted, the case is remanded to the Superior Court of Forsyth County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first degree murder of which defendant has been convicted; and (2) that in accordance with said judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk of superior court furnish to defendant and his counsel a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict;

Death sentence vacated.

Justice EXUM dissenting:

I dissent for the reason that it was prejudicial error in this case to permit the state to offer evidence of defendant's participation in an earlier, distinct, and separate robbery for the purpose of proving that defendant was robbing or attempting to rob Jones' Confectionery at the time he shot Mr. Jones. While the majority attempts to justify the admission of this evidence as tending to prove defendant's "intent," it seems clear to me that the real and only conceivable purpose of the evidence was to show *what happened* inside the confectionery. Clearly it could not be offered for this purpose. "Logically, the commission of an independent offense is not proof in itself of the commission of another crime." *State v. McClain*, 240 N.C. 171, 173-74, 81 S.E. 2d 364, 365 (1954), *quoting Shaffner v. Commonwealth*, 72 Pa. 60, 13 Am. R. 649, which was also quoted with approval in *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193 (1904). "A person cannot be convicted of one offense upon proof that he committed another . . . . " *Peo-*

*ple v. Molineux,* 168 N.Y. 264, 292, 61 N.E. 286, 294, 62 L.R.A. 193, 237 (1904), *quoting Coleman v. People,* 55 N.Y. 81 (1873). "One who commits a crime may be more likely to commit another; yet, logically, one crime does not . . . tend to prove another unless there is such a relation between them that proof of one tends to prove the other." *State v. Beam,* 184 N.C. 730, 734, 115 S.E. 176, 178 (1922). *See also State v. Thompson,* 290 N.C. 431, 226 S.E. 2d 487 (1976) and *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974) where evidence of other crimes was admitted but the Court was careful to note in both cases that *what happened* was not really at issue. The crucial question in those cases was the identity of the perpetrator.

The real factual question, as a close examination of the evidence will show, is what happened inside Jones' Confectionery, not defendant's intent, *mens rea,* or state of mind. The state *contends* defendant was robbing or attempting to rob Jones at the time of the shooting. There is, however, no direct evidence of what happened other than defendant's out-of-court statement offered by the state in which he denied committing or attempting to commit a robbery. His statement was that he took the gun to his brother's house near North Trade Street apparently for the purpose of leaving it with his brother. Upon finding his brother not at home, he left with the gun. He walked into Jones' Confectionery for the purpose of buying a pack of cigarettes. After he bought the cigarettes and while he was leaving, the shooting took place which resulted in his being wounded and Jones' being killed. Other evidence in the case showed that Jones' stepson was a friend of defendant and that it was customary for defendant to visit the confectionery.

In an effort to discredit this out-of-court statement which it offered *and* to prove that in fact defendant was committing or attempting to commit an armed robbery, the state offered evidence that five days before defendant robbed another establishment with the same or a similar shotgun. Merely discrediting defendant's statement would not, of course, establish a robbery or its attempt.

To say that under these circumstances evidence of the prior crime is offered on the question of defendant's intent, demonstrates misunderstanding of this exception to the general rule of exclusion of evidence of other crimes and extends the exception far beyond anything this Court has heretofore per-

mitted. In each of the cases I have found on the subject, evidence of another criminal offense offered to prove defendant's criminal intent with regard to the crime being tried was admitted only after proof of an overt act of defendant which, if done with criminal intent, would constitute a crime.

In *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47 (1972), relied on by the majority, the defendants were charged with attempted armed robbery of one Charles Stewart, a service station attendant. There was plenary evidence of what happened inside the service station. The state's evidence tended to show that defendants, one of whom was brandishing a pistol, demanded that Stewart open the cash register. Stewart resisted, a tussle ensued, and the defendants ran, their efforts foiled. Defendants testified that they were not trying to rob Stewart but the gun was brandished and the tussle was caused because Stewart would not give them a refund when one of them received no merchandise after putting money in a vending machine. Thus, when defendants rested, the crucial issue in the case was not what happened but what kind of intent accompanied the brandishing of the gun. Was it drawn with the intent to rob or in an effort to obtain a refund to which defendants were entitled?

To resolve this ambiguity, the state *in rebuttal* offered evidence that on a prior occasion one of the defendants had robbed a Little General Store in the process of which he stole the very pistol used in the crime on trial.

*Long* presents the classic case of the state's having proved an ambiguous act—an act which, done with the necessary criminal intent is a crime, but, done without that intent, is not.

All the cases relied on by the majority are similar to *Long,* and reach similar results. They are, however, materially unlike the case at bar in that in this case there is no proof of any overt act by defendant which could be construed as constituting a robbery or an attempt to rob the confectionery. The facts that defendant entered the store with a shotgun; shot Jones; fled the scene after the shooting; and lied to the officer at the hospital about his true name and address do not constitute such proof. While the majority says the shotgun was "concealed" on the defendant when he entered the store, there is no testimony whatever that it was. The only state's witness who saw him enter was sitting on her front porch across the street, some distance

State v. May

away from the confectionery. She testified simply that she did not see the gun at that time. The state's evidence also tends to show that Jones shot first. It is, of course, mere speculation, but it is possible that defendant entered the store to buy cigarettes with a gun. Jones, mistakenly believing he was going to be robbed, shot defendant who then returned the fire. The point is, assuming defendant's statement is disregarded, we don't know what actually happened inside the store.

Robbery, as the majority correctly notes, requires the taking of personal property of another from his person or in his presence and without his consent. Even an attempted robbery as the majority also notes requires *"some overt act calculated and designed to bring about the robbery. . . ."* (Emphasis supplied.) Until there is evidence in the case of some overt act which could be construed as constituting a taking or an attempt to take the property of another, the question of defendant's intent simply does not arise. Though the suspicion aroused may be strong, there is absolutely no evidence that defendant was taking anything or that he was attempting to take anything at the time the shooting occurred.

The effect of the majority's ruling is far-reaching. It amounts to this: The state, lacking evidence of what actually happened, may bootstrap itself around this deficiency by offering evidence of what defendant did on some other occasion. This, according to the majority, proves defendant's intent to do on the occasion in question what the state contends he did. This, in turn, somehow proves that he did it. Under the majority's holding the rule against admitting such evidence is totally abrogated. The state may use it in any case, but particularly in those cases where there is no other evidence as to what happened.

One theory upon which evidence of the 8 February robbery might be admisible to prove the commission or attempted commission of a robbery on 13 February is that evidence of both events tends to prove a scheme, plan, or design on the part of the defendant to rob both establishments. "When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's Design or Plan to do it. This in turn may be evidenced by conduct of sundry sorts as well as by direct assertions of the design." 2 Wigmore on Evidence § 304 at 202 (3d. ed. 1940). Conduct which constitutes

State v. May

another crime is admissible on this theory "when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission." *State v. McClain, supra* at 176, 81 S.E. 2d at 367.

When, however, another crime is offered as conduct tending to show defendant's plan to do an act which in turn tends to prove that the act was done, there must be more than merely some similarity between the other crime and the crime sought to be proved. The incidents must be so strikingly alike in detail that evidence of both raises a reasonable inference of the existence of a plan out of which both sprang. "But where the conduct offered [to prove a plan] consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing Intent. . . . The added element then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*" 2 Wigmore on Evidence § 304 at 202 (3d. ed. 1940). (Emphasis the author's.)

The only similarity shown by the evidence between the XL Cleaners' incident and that at Jones' Confectionery was that a similar type gun was used in both. This is not enough to permit a reasonable inference that the two incidents sprang from a common plan. The dissimilarities in the two incidents are, really, more striking and tend to negate the existence of such a plan. The XL robber wore a cap hiding his hair and used an alias in robbing an establishment where he was not known and which was apparently frequently manned by two persons. In contrast, defendant made no attempt to conceal his identity at Jones' Confectionery. Indeed, he wore trousers with his first name embroidered on them. He was known to Jones and was a friend of Jones' son. The confectionery was entirely a one-man operation. Because of a lack of evidence as to precisely what happened inside the confectionery there can be no comparison in any detail of defendant's *modus operandi* in the two incidents. *Compare, e.g., State v. Tuggle, supra.*

This evidence then falls far short of tending to show that both the 8 February and the 13 February incidents arose out

of a common plan devised by defendant to rob both establish-
ments. Rather, when closely examined, it tends to negate such
a plan. *See People v. Molineux, supra,* where evidence of dif-
ferent motives for otherwise similar crimes precluded one from
being offered in the trial of the other on the common plan
theory *Molineux* was distinguished on this ground in *State v.
Smoak,* 213 N.C. 79, 195 S.E. 72 (1938).

The difference between the criminal intent, or scienter,
exception and the common plan exception to the rule generally
excluding other crimes evidence is subtle but important to
maintain. Criminal intent or scienter is always one of the
essential elements of the crime sought to be proved, or if not
technically an element, at least a state of mind without which
there can be no crime. The rule as stated by Justice Ervin in
*State v. McClain,* 240 N.C. 171, 175, 81 S.E. 2d 364, 366 (1954)
makes this clear:

> "2. Where a specific mental intent or state *is an
> essential element of the crime charged,* evidence may be
> offered of such acts or declarations of the accused as tend
> to establish the requisite mental intent or state, even though
> the evidence discloses the commission of another offense
> by the accused. [Citations omitted.]" (Emphasis supplied.)

This criminal intent consequently is always one of the ultimate
facts sought to be proved by the state. It is not a fact from
which other facts such as overt acts of the defendant may be
inferred. Indeed the question of intent does not arise really until
some overt act which could constitute the crime is proven. A
plan or design to commit a crime, on the other hand, like crimi-
nal intent, may exist in the mind of the defendant; but it is
not a mental state which is a *sine qua non* of the crime. It is
not an ultimate fact sought to be proved by the state. It is a
mere evidentiary fact which, if properly established, may tend
to prove the crime.

Neither do I believe the evidence is admissible on the ques-
tion of identity. Evidence of other crimes offered for this
purpose is admissible "[w]here the accused *is not definitely
identified* as the perpetrator of the crime charged and the
circumstances tend to show that the crime charged and another
offense were committed by the same person . . . . " *State v. Mc-
Clain, supra,* 240 N.C. at 175, 81 S.E. 2d at 367. (Emphasis
supplied.) This, of course, is not a case where the accused is

not definitely identified. There was no real issue regarding defendant's identity except that raised theoretically by his plea of not guilty. The state's evidence clearly and unequivocally identified him as the perpetrator of the homicide. Defendant offered no evidence to the contrary. *Compare State v. Grace*, 287 N.C. 243, 213 S.E. 2d 717 (1975), where the defense was alibi; *State v. Tuggle, supra,* where defendant expressly denied his participation in the robbery; *State v. McClain*, 282 N.C. 357, 193 S.E. 2d 108 (1972), where identification of defendant was a key factual issue; and *State v. Thompson, supra,* 290 N.C. at 441, 226 S.E. 2d at 493, where "[t]he crucial issue in the trial was . . . whether defendant . . . was one of the two men who participated in the crime." The Iowa Supreme Court has aptly observed in *State v. Wright,* 191 N.W. 2d 638, 640 (Iowa 1971):

> "There must be some factual issue raised to permit evidence of other crimes under the noted exceptions. If no such issue exists, then the evidence is unnecessary and the exception may not be relied upon. . . . Here the defendant presented no evidence, and the State's theory posed an uncomplicated factual situation for jury determination. . . . There is no real issue . . . to justify the admission of testimony of other crimes, nor can it be seriously argued that the evidence was admissible to prove identity."

For these reasons I would hold that admitting the evidence in this case of the 8 February robbery was improper, highly prejudicial, and entitles defendant to a new trial.